## In re CORRUGATED CONTAINER ANTITRUST LITIGATION.

### No. 310.

Judicial Panel on Multidistrict Litigation.

Nov. 29, 1977.

## OPINION AND ORDER

Before JOHN MINOR WISDOM, Chairman, and EDWARD WEINFELD, EDWIN A. ROBSON *, JOSEPH S. LORD, III *, STANLEY A. WEIGEL, ANDREW A. CAFFREY, and ROY W. HARPER *, Judges of the Panel.

PER CURIAM.

This litigation presently consists of 37 actions pending in seven federal districts: seventeen in the Southern District of Texas; fourteen in the Northern District of Illinois; two in the Southern District of

New York; and one each in the Northern District of Texas, the Northern District of California, the Central District of California and the District of Minnesota.

The complaints in these actions basically allege that from as early as 1960 until 1975 the defendants and various co-conspirators have engaged in a nationwide conspiracy to fix, raise, maintain and stabilize the prices of corrugated containers in violation of Section 1 of the Sherman Act. With one exception, all the actions were filed as purported class actions. While there are some variations in the descriptions of the classes sought, all are national classes consisting of all, or some group of, corrugated container purchasers. The complaints name a total of 38 defendants, including twenty defendants that are named in all actions.

The complaints in this litigation generally describe "corrugated containers" as follows:

Corrugated containers are made from that category of paperboards referred to as corrugated board. It is made from light weight paperboard suitable for corrugating, principally semi-chemical, kraft, straw, or mix paper stock. Corrugated containers are made in a variety of styles according to the needs of the customer.

In December 1975, a federal grand jury in the Southern District of Texas began an antitrust investigation of the corrugated container industry. No indictments have been returned, and the grand jury's investigation apparently is continuing.

This litigation is before the Panel on the motion of eighteen defendants, including fourteen of the defendants common to all actions, for transfer pursuant to 28 U.S.C. § 1407 of the actions pending in districts other than the Southern District of Texas to that district for coordinated or consolidated pretrial proceedings with the actions pending there. All responding parties agree on or recognize the propriety of transfer. The only dispute among the par-

* Judges Robson, Lord and Harper took no part in the decision of this matter.

ties concerns the transferee forum.[1] Besides the Southern District of Texas, for all practical purposes, only the Northern District of Illinois has been suggested as an appropriate transferee forum.[2]

We find that these actions involve common questions of fact and that their transfer under Section 1407 to the Southern District of Texas will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.

Fourteen of the 38 defendants in MDL–310 are also defendants in *In re Folding Carton Antitrust Litigation*, MDL–250, which is presently pending in the Northern District of Illinois. *See In re Folding Carton Antitrust Litigation*, 415 F.Supp. 384 (Jud.Pan.Mult.Lit.1976). The complaints in that litigation basically describe "folding cartons" as:

> Containers made principally from that category of paperboards referred to as bending box board. It is made from virgin and reworked cellulose fibers. The chief characteristic of bending board is its ability to be bent or folded without breaking or serious damage at the crease lines which form the limits of the sides or ends of the carton.

The similarity between the actions in MDL–310 and the actions in MDL–250 is a subject of considerable dispute among some of the parties in MDL–310.

The parties favoring transfer to the Northern District of Illinois argue that MDL–310 and MDL–250 may be closely related, at least in part because mill produced paperboard allegedly is the basic ingredient for both corrugated containers and folding cartons. These parties also assert that discovery to date in MDL–250 demonstrates that costs, prices and production of corrugated containers and folding cartons are somewhat related, and that there are common sales and production personnel in both segments of the paperboard industry. Moreover, these parties point out, document depositories in MDL–250 have been established in Chicago and substantial discovery has been completed in that litigation. Access to the hundreds of thousands of documents presently on file in the folding carton document depositories, many of which relate to economic, accounting and marketing data of the fourteen defendants common to both MDL–310 and MDL–250, clearly will be of substantial value to all plaintiffs who have filed corrugated container actions, these parties maintain. Thus, these parties assert that transfer of MDL–310 to the Northern District of Illinois will best permit coordination between MDL–250 and MDL–310 and best allow plaintiffs to ascertain the extent of conspiratorial activity in the paperboard industry.

In addition, these parties argue that the Northern District of Illinois is the most appropriate transferee forum for MDL–310 because: (1) The headquarters of the Fibre Box Association, the trade association for the corrugated container industry and, according to some of the complaints in this litigation, a central clearinghouse for information used by the defendants and co-con-

---

1. Two defendants urge the Panel to defer selection of a transferee forum because pretrial proceedings in the actions in this litigation are in a relatively embryonic stage and the grand jury investigation in Houston of the corrugated container industry has not yet been concluded. We see no reason to grant this request. Transfer at this time will maximize judicial efficiency and best accomplish the other purposes of Section 1407.

2. Plaintiff in one of the New York actions favors the Southern District of New York as its first choice for the transferee forum. In the alternative, that plaintiff favors the Southern District of Texas. That plaintiff has presented no arguments in support of the Southern District of New York, however, and we find that the New York forum would not be an appropriate transferee district for this litigation. Plaintiff in the other New York action originally favored the Southern District of New York as the transferee forum, but at oral argument that plaintiff stated that it now favors the Southern District of Texas. Transcript at 46–47.

Five defendants state that they are presently unable to urge selection of a particular district as the transferee forum.

spirators to effectuate the alleged conspiracy, is located in Chicago; (2) Twenty-three of the 38 defendants in MDL–310 have their principal places of business, where relevant witnesses and documents presumably will be found, in Illinois or the upper Midwest; (3) Many plaintiffs' attorneys in this litigation, including attorneys for the plaintiffs in all seventeen Southern District of Texas actions, already are involved in MDL–250 and could most efficiently make a single trip to Chicago in connection with pretrial proceedings in both litigations; and (4) the Panel has often acknowledged that Chicago's central location commends transfer to the Northern District of Illinois when a litigation is nationwide in scope.

These parties discount the importance of the pendency of the grand jury investigation in Houston. They stress that no indictment has yet been handed down and that the Panel has not always considered the pendency of related Government proceedings in a particular district to be the determinative factor in selecting a transferee forum.

Although either the Southern District of Texas or the Northern District of Illinois could be described as an appropriate transferee forum for MDL–310, on balance we conclude that the Southern District of Texas is preferable. The moving defendants have represented to the Panel that approximately 1.5 million documents have been produced to the grand jury in Houston and that over 100 witnesses have been called to testify before that grand jury. Transcript at 24. Regardless of whether any indictments are handed down by the Houston grand jury, plaintiffs in the actions in MDL–310 in all likelihood will seek to discover the grand jury materials. Since these materials are under the custody and control of the Southern District of Texas, transfer to that forum will best facilitate any necessary coordination between the Government proceedings and the private actions. *See In re Hawaiian Hotel Room Rate Antitrust Litigation,* 438 F.Supp. 935, 936 (Jud.Pan.Mult.Lit., filed September 27, (1977); *In re Anthracite Coal Antitrust Litigation,* 436 F.Supp. 402, 403 (Jud.Pan.Mult.Lit.1977); *In re Folding Carton Antitrust Litigation, supra,* 415 F.Supp. at 386. Moreover, seventeen of the 37 actions before us already are pending in the Southern District of Texas, *see In re Investors Funding Corporation of New York Securities Litigation,* 437 F.Supp. 1199, 1202 (Jud.Pan.Mult.Lit., filed August 8, 1977) and a majority of the responding parties favor transfer to that district, *see In re Westinghouse Electric Corp. Uranium Contracts Litigation,* 405 F.Supp. 316, 319 (Jud.Pan.Mult.Lit.1975).

The record before us leaves unclear the extent of commonality between MDL–250 and MDL–310. But even viewing the record in the light most favorable to the advocates of transfer to the Northern District of Illinois, we still find that the just and efficient conduct of MDL–310 can best be furthered by its transfer to the Southern District of Texas. We are confident that if any need arises to coordinate pretrial proceedings in MDL–250 and MDL–310, communication and cooperation among the judges supervising these litigations, coupled with the cooperation of all parties and their counsel, will be sufficient to prevent any duplicative discovery, eliminate the possibility of conflicting pretrial rulings, and thereby result in an overall streamlining of pretrial proceedings in both litigations. *See In re Sugar Industry Antitrust Litigation,* 427 F.Supp. 1018, 1026–27 (Jud.Pan.Mult.Lit. 1977).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on the following Schedule A and pending in districts other than the Southern District of Texas be, and the same hereby are, transferred to the Southern District of Texas and, with the consent of that court, assigned to the Honorable John V. Singleton, Jr., for coordinated or consolidated pretrial proceedings with the actions already pending in that district and listed on Schedule A.

## SCHEDULE A

| Southern District of Texas | Civil Action No. |
|---|---|
| Adams Extract Co. v. Alton Box Board Co., et al. | 77–H–461 |
| Pepsi-Cola Bottling Co. of Washington, D. C., Inc., et al. v. Weyerhaeuser Co., et al. | 77–H–584 |
| Williams Manufacturing Co. and Seneca Industries, Inc. v. Alton Box Board Co., et al. | 77–H–789 |
| West Publishing Co. v. Alton Box Board Co., et al. | 77–H–791 |
| Valley Plastics, Inc. v. Alton Box Board Co., et al. | 77–H–792 |
| Levee Furniture Co. v. Alton Box Board Co., et al. | 77–H–793 |
| Duranne of California, Inc. d/b/a Embassy Giftwares v. Alton Box Board, et al. | 77–H–724 |
| Austine Products Co. v. Alton Box Board Co., et al. | 77–H–782 |
| Arcadia Furniture Corp. v. Alton Box Board Co., et al. | 77–H–790 |
| Red Wing Industries, Inc. v. Alton Box Board Co., et al. | 77–H–804 |
| Winona Industries, Inc. v. Alton Box Board Co., et al. | 77–H–814 |
| Pepco Industries, Inc. v. Alton Box Board Co., et al. | 77–H–813 |
| After Six, Inc., Bert Paley, Ltd. and Commonwealth Toy & Novelty Co, Inc. v. Alton Box Board Co., et al. | 77–H–805 |
| Grist Mill Co. v. Alton Box Board Co., et al. | 77–H–849 |
| Valley Avocado Sales, Inc. v. Alton Box Board Co., et al. | 77–H–869 |
| Universal Cooperatives, Inc. v. Alton Box Board Co., et al. | 77–H–885 |
| Shell-Tex Fisheries, Ltd. v. Alton Box Board Co., et al. | 77–H–876 |

### Northern District of Illinois

| | Civil Action No. |
|---|---|
| Douglas Furniture Corp. v. Container Corp. of America, et al. | 77–C–799 |
| Wittek Golf Supply Co., Inc. v. Alton Box Board, et al. | 77–C–976 |
| Amberley Greeting Card Co., et al. v. Alton Box Board, et al. | 77–C–1106 |
| Westbrae Natural Foods, Inc. v. Alton Box Board, et al. | 77–C–1107 |

| Northern District of Illinois | Civil Action No. |
|---|---|
| Coordinated Industries, Inc. v. Alton Box Board, et al. | 77–C–1108 |
| Furniture Plastics, Inc. v. Alton Box Board, et al. | 77–C–1149 |
| Carron Manufacturing Co. v. Williamette Inc., et al. | 77–C–1063 |
| Carnavale Bag Co., Inc. v. Alton Box Board, et al. | 77–C–1198 |
| Durawood Industries, Inc. v. Alton Box Board Co., et al. | 77–C–1521 |
| Sambo's Restaurants, Inc. v. Alton Box Board Co., et al. | 77–C–1611 |
| Bodines, Inc. v. Alton Box Board Co., et al. | 77–C–1965 |
| Snyder-Craft, Co., Inc. v. Alton Box Board Co., et al. | 77–C–1905 |
| Veneer Distributors, Inc. v. Alton Box Board Co., et al. | 77–C–2435 |
| Salsburg Meats, Inc. v. Alton Box Board Co., et al. | 77–C–2433 |

### Southern District of New York

| | |
|---|---|
| Covington Fabrics Corp. v. Alton Box Board Co., et al. | 77 Civ 2881 |
| The Beaumont Co. v. Alton Box Board Co., et al. | 77 Civ 2926 |

### Northern District of California

| | |
|---|---|
| Andre-Boudin Bakeries, Inc. v. Alton Box Board Co., et al. | C77–1283–WTS |

### Central District of California

| | |
|---|---|
| Westside Paper Co. v. Alton Box Board Co., et al. | CV77–2523–WMB |

### District of Minnesota

| | |
|---|---|
| Artcraft Press, Inc. v. Alton Box Board Co., et al. | 4–77–Civ–195 |

### Northern District of Texas

| | |
|---|---|
| United Farmers Cooperative, Inc., et al. v. International Paper Co., et al. | CA–2–77–73 |