447 F.Supp. 468 (1978)
In re CORRUGATED CONTAINER ANTITRUST LITIGATION.
Franklin Container Corp., et al.
v.
International Paper Co., et al., E. D. Pennsylvania, C.A. No. 77-3204
No. 310.
Judicial Panel on Multidistrict Litigation.
March 22, 1978.
Before JOHN MINOR WISDOM, Chairman, and EDWARD WEINFELD, EDWIN A. ROBSON, JOSEPH S. LORD, III[*], STANLEY A. WEIGEL, ANDREW A. CAFFREY[*], and ROY W. HARPER[*], Judges of the Panel.
Before the Judicial Panel on Multidistrict Litigation.

*469 OPINION AND ORDER
PER CURIAM.
The Panel, pursuant to 28 U.S.C. § 1407, previously transferred several actions in this litigation to the Southern District of Texas and, with the consent of that court, assigned them to the Honorable John V. Singleton, Jr., for coordinated or consolidated pretrial proceedings with the actions pending there. In re Corrugated Container Antitrust Litigation, 441 F.Supp. 921 (Jud. Pan.Mult.Lit.1977). In so doing, the Panel described the actions in this litigation as follows:
The complaints in these actions basically allege that from as early as 1960 until 1975 the defendants and various co-conspirators have engaged in a nationwide conspiracy to fix, raise, maintain and stabilize the prices of corrugated containers in violation of Section 1 of the Sherman Act. With one exception, all the actions were filed as purported class actions. While there are some variations in the descriptions of the classes sought, all are national classes consisting of all, or some group of, corrugated container purchasers. The complaints name a total of 38 defendants, including twenty defendants that are named in all actions. Id. at 922.
The complaint in the above-captioned action (Franklin) is brought as a purported class action on behalf of all independent corrugated box manufacturers[1] located in the United States that, during the period from January 1970 until late 1977, purchased Kraft liner board[2] manufactured by one or more of the defendants and that sold corrugated boxes in competition with one or more of the defendants.
Plaintiffs in Franklin name as defendants fourteen companies. Each of these fourteen defendants is also a defendant in Corrugated Container; ten of them are defendants in all the actions in Corrugated Container.
The complaint in Franklin alleges that the defendants, commencing in or about 1945 and continuing until late 1977, conspired to monopolize the manufacture, distribution, sale and shipment of corrugated *470 boxes in the United States in violation of Section 2 of the Sherman Act. The complaint further alleges that defendants conspired to restrain trade unreasonably in the manufacture, distribution, sale and shipment of Kraft liner board and corrugated boxes in violation of Section 1 of the Sherman Act. This conspiratorial activity allegedly included, inter alia, the following acts: (1) Acquiring the ownership of independent corrugated box manufacturers and/or constructing corrugated box plants, thus becoming the competitors of the independent manufacturers while remaining the principal source of supply of Kraft liner board for the independent manufacturers; (2) Increasing the prices of Kraft liner board sold to independent manufacturers, while at the same time selling or transferring Kraft liner board to defendants' own corrugated box manufacturing plants at prices significantly lower than the prices charged to plaintiffs; (3) Fixing the prices of corrugated boxes at artificially low levels; (4) Participating in certain reciprocal arrangements with co-defendants, including the exchange of Kraft liner board throughout the United States without regard to differences in cost of production and without charge for freight, handling or other necessary costs; and (5) Furnishing certain trade publications with incomplete and misleading statistics relating to the production, prices and inventory of Kraft liner board and corrugated boxes in order to distort certain statistics disseminated by those publications, thus enabling defendants to fix the prices charged for Kraft liner board which was sold to the independent manufacturers. The complaint in Franklin charges that defendants' conduct has enabled them to increase their share of the market in the manufacture, distribution and sale of corrugated boxes in the United States to approximately 80 percent.
Because Franklin appeared to share questions of fact with the actions previously transferred to the Southern District of Texas, the Panel issued an order conditionally transferring Franklin to that district for inclusion in the Section 1407 proceedings pending there. The named plaintiffs in Franklin, nine defendants in that action and Plaintiffs' Steering Committee in Corrugated Container have moved the Panel to vacate the conditional transfer order. Four defendants in Franklin, as well as a Corrugated Container defendant that is a member of the purported plaintiffs' class in Franklin, support transfer of Franklin to the Southern District of Texas.
We find that Franklin shares questions of fact with the actions previously transferred to the Southern District of Texas and that transfer of Franklin to that district under Section 1407 will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.
The parties that oppose Section 1407 transfer of Franklin argue that Franklin and the actions in Corrugated Container involve different economic and conspiratorial issues. These parties point out that the complaints in the actions in Corrugated Container allege a general nationwide conspiracy to fix the price of corrugated containers at artificially high levels. In contrast, these parties assert, the complaint in Franklin alleges that defendants in that action fixed the price at which they sell corrugated boxes at artificially low levels in comparison to the price that could feasibly be charged by independent manufacturers. These parties further maintain that the alleged price fixing involved in Franklin occurred in limited geographic areas and for limited periods, and was merely one aspect of the predatory course of conduct allegedly carried out by defendants against selectively targeted independents in order to further defendants' conspiracy to monopolize trade in corrugated boxes. These parties thus argue that Franklin is basically a Sherman Act Section 2 monopolization case and that the bulk of the discovery necessary in Franklin will be significantly different than that involved in Corrugated Container.
Opponents to transfer also assert that because some companies are both defendants in Corrugated Container and members of the purported class in Franklin, those companies will have interests antagonistic *471 to the interests of the other plaintiffs and defendants in Corrugated Container, and therefore Franklin and Corrugated Container can most fairly and efficiently be conducted by leaving them separate.
Opponents to transfer point out that the pendency in Houston of a grand jury investigation into possible antitrust violations in the corrugated container industry was an important factor in the Panel's decision to transfer the actions in Corrugated Container to the Southern District of Texas.[3] The Government proceedings pending in Houston, however, are not relevant to the subject matter involved in Franklin, these parties maintain. To the extent that the pendency of Government proceedings is relevant, these parties argue, a federal grand jury currently sitting in Philadelphia is investigating, inter alia, possible antitrust violations concerning Kraft liner board. These parties assert that information concerning market structure, conduct, performance and other economic data and analyses concerning the Kraft liner board industry and the manufacturing of corrugated boxes would much more likely emanate from the Philadelphia grand jury investigation than from the Houston proceedings.
Therefore, opponents to transfer conclude that transfer of Franklin to the Southern District of Texas would merely introduce broad new issues and pretrial problems into the Section 1407 proceedings pending there without any commensurate benefit to the parties in those proceedings or in Franklin. Should there be any need to coordinate discovery or other pretrial proceedings in Franklin and the actions in Corrugated Container, these parties maintain that the district courts handling these actions could and would effectively provide for such coordination.
We find these arguments unpersuasive. While we recognize that Franklin and the actions in the transferee district involve some disparate factual issues and legal theories, the record before us amply demonstrates that Franklin and the actions in Corrugated Container share numerous significant questions of fact concerning whether there was price fixing in the corrugated container industry, and if so, when, where, how, by whom and was it at artificially high or low levels. We are convinced that the parties in Franklin and Corrugated Container will have to depose many of the same witnesses, examine many of the same documents, and make many similar pretrial motions in order eventually to proveor disproveboth sets of conspiracy allegations. Thus, as we stated in In re Beef Industry Antitrust Litigation, 432 F.Supp. 211, 213 (Jud.Pan.Mult.Lit.1977), which involved issues very similar to those now before us, transfer of Franklin
is necessary in order to prevent duplicative discovery, eliminate any possibility of conflicting pretrial rulings and conserve time and effort for the parties, the witnesses and the judiciary. Any antagonistic interests among the parties in the various actions may be accommodated by the transferee judge in designing the pretrial program. See [In re Sugar Industry Antitrust Litigation, 437 F.Supp. 1204, 1206-08 (Jud.Pan.Mult.Lit.1977);] In re Delta Airlines Crash at Boston, Massachusetts, 395 F.Supp. 1405, 1407 (Jud.Pan. Mult.Lit.1975); In re Franklin National Bank Securities Litigation, 393 F.Supp. 1093, 1095 (Jud.Pan.Mult.Lit.1975). And discovery on any issues unique to [Franklin] may be scheduled by the transferee judge to proceed in a separate discovery schedule concurrently with discovery on common issues. See In re Republic National-Realty Equities Securities Litigation, 382 F.Supp. 1403, 1405-06 (Jud.Pan. Mult.Lit.1974).
*472 We agree with the parties that argue that documents relevant to Franklin may be gathered by the federal grand jury in the Eastern District of Pennsylvania, which is investigating possible antitrust violations in the manufacture, distribution and sale of paper and paper products. See In re Fine Paper Antitrust Litigation, 446 F.Supp. 759, 760 (Jud.Pan.Mult.Lit. 1978). Under the particular circumstances of the matter now before us, however, where over 1.5 million documents directly related to the corrugated container industry were produced to the Houston grand jury,[4] and where each of the defendants in Franklin is already involved as a defendant in Corrugated Container, inclusion of Franklin in Corrugated Container will clearly promote the just and efficient resolution of both Franklin and the actions already in the transferee district.
IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the action captioned Franklin Container Corp., et al. v. International Paper Co., et al., E.D.Pennsylvania, C.A. No. 77-3204, be, and the same hereby is, transferred to the Southern District of Texas and, with the consent of that court, assigned to the Honorable John V. Singleton, Jr., for coordinated or consolidated pretrial proceedings with the actions already pending there in MDL-310.
NOTES
[*] Judges Lord, Caffrey and Harper took no part in the decision of this matter.
[1] The term "independent corrugated box manufacturer" is defined in the Franklin complaint as a "company which owns or controls one or more corrugated box plants and which is not a manufacturer of Kraft liner board."
[2] Kraft liner board is a raw material used in the manufacture of corrugated containers. Kraft liner board is defined in the Franklin complaint as a "type of paper possessing superior characteristics of bursting and tensile strength and resistance to adverse weather conditions which make it suitable for the manufacture of corrugated board." Corrugated board allegedly consists of two or more sheets of Kraft liner board that have been cemented to a corrugating medium.
[3] In late January 1978, the Houston grand jury indicted fourteen paper manufacturers and 26 of their present or former officers and employees for allegedly fixing the price of corrugated containers and sheets sold east of the Rocky Mountains for the past eighteen years. Nine corporations and nine individuals were charged with felony antitrust violations, and the remaining five corporations and seventeen individuals were charged with misdemeanor antitrust violations. These criminal proceedings have been assigned to Judge Singleton.
[4] In re Corrugated Container Antitrust Litigation, supra, 441 F.Supp. at 924.