In re "FINE PAPER" ANTITRUST LITIGATION.

*State of Arizona v. Boise Cascade Corp., et al.*, D.Arizona, C.A. No. Civ–78–66–CAM

*Fred Ernst, etc., et al. v. Boise Cascade Corp., et al.*, N.D. California, C.A. No. C78–0722–RHS

*State of California v. Boise Cascade Corp., et al.*, N.D. California, C.A. No. C78–0774–SW

*State of Utah v. Boise Cascade Corp., et al.*, D. Utah, C.A. No. C78–0131

**No. 323.**

Judicial Panel on Multidistrict Litigation.

July 11, 1978.

See also Jud.Pan.Mult.Lit., 446 F.Supp. 759.

Before JOHN MINOR WISDOM, Chairman, and EDWARD WEINFELD, EDWIN A. ROBSON, JOSEPH S. LORD, III, STANLEY A. WEIGEL, ANDREW A. CAFFREY and ROY W. HARPER *, Judges of the Panel.

OPINION AND ORDER

PER CURIAM.

On March 3, 1978 the Panel, pursuant to 28 U.S.C. § 1407, transferred twelve actions to the Eastern District of Pennsylvania and, with the consent of that court, assigned those actions to the Honorable Joseph L. McGlynn, Jr. for coordinated or consolidated pretrial proceedings with three actions already pending in that district. *In re "Fine Paper" Antitrust Litigation*, 446 F.Supp. 759 (Jud.Pan.Mult.Lit.1978).[1] Since

---

\* Judge Harper took no part in the decision of this matter.

1. On the same day that the Panel issued its opinion and order transferring these actions, the Panel issued an order concerning a motion brought by the State of Oregon for the Panel to defer ruling on the question of transfer in this litigation "for a reasonable time." In its motion, Oregon represented that subsequent to the Panel's original hearing on this matter, ad-

ditional complaints had been filed, and others might soon be filed, which were related to, but expanded the scope of this litigation by, *inter alia*, naming as defendants not only those manufacturers named in previously filed complaints, but also certain "merchant houses," which are wholesaler customers of the manufacturer defendants. Oregon urged that the Panel defer its ruling until such time as all facets of this litigation were before the Panel, including any arguments that might be raised

that time, the Panel has transferred twelve tag-along actions to the Eastern District of Pennsylvania for inclusion in the Section 1407 proceedings pending there, and some additional actions have been filed in that district. All the actions in the transferee district were filed as purported class actions. While there are some variations in the descriptions of the classes sought, most are national classes of some group of fine paper purchasers.

The complaints in most of the actions (mill actions) in the transferee district basically allege that from as early as 1965 until 1977 the defendants and various co-conspirators conspired at the mill level, in violation of Section 1 of the Sherman Act, to fix the price of fine paper and to eliminate inter- and intra-brand competition among their wholesaler customers.[2] All the complaints in these actions name as defendants only companies (mills) that are engaged in the manufacture and sale of fine paper.

The complaints in seven of the actions in the transferee district, filed by, respectively, the states of Colorado, New Mexico, Nebraska, Oregon, Missouri, Pennsylvania and Arkansas (the merchant house actions) include as defendants most of the mill defendants named in the other actions in the transferee district. These complaints, however, also name two paper trade associations and a variety of "mill-affiliated" and "independent" merchant houses[3] as either defendants or co-conspirators. The complaints in these actions include many of the allegations involved in the complaints in the mill actions in the transferee district, and, in addition, the complaints in the merchant house actions allege that the conspiracy in the fine paper industry included concerted action among the merchant house defendants and the mill defendants to fix the price of fine paper, to suppress and eliminate competition from independent merchant houses, and to allocate governmental agency customers and rig bids to these customers.

The four actions presently before the Panel were commenced by, respectively, the states of Arizona, California and Utah and by a private party, as class actions. The state actions are each brought on behalf of a class of all other political subdivisions within the respective state, and the private party in the fourth action basically seeks to represent a national class of all non-governmental purchasers of fine paper. Each complaint names a variety of defendants, including mills, mill-affiliated merchant houses and independent merchant houses.

---

in support of transfer to a district not then considered by the Panel. The Panel found that no good cause had been shown for delaying the Panel's ruling and order of transfer of this litigation and, accordingly, denied Oregon's motion.

2. The allegations of these complaints concerning the purported elimination of competition among defendants' wholesaler customers are basically as follows:

Defendants and co-conspirators employed threats and other concerted action against merchant houses to secure adherence to an aggregation of trade restraints designed to minimize price discounting and otherwise minimize intrabrand competition between [mill]-owned and independent merchant houses, the substantial terms of which were that:

(i) Merchant houses would sell fine paper at regular bracket prices and discount terms fixed by the defendants and co-conspirators; and

(ii) Non-conforming merchant houses were systematically eliminated as competitors.

These complaints allege that, as a result of these activities, "competition in the sale of fine paper between the defendants and co-conspirators and between [mill]-owned and independent merchant houses has been restrained."

3. One of the movants now before the Panel draws the following distinctions between "mill-affiliated" and "independent" merchant houses: "An 'independent merchant house' [unlike a 'mill-affiliated' merchant house] is a merchant house which is not owned or controlled by any mill and is not tied directly or indirectly to the output of a single mill but, rather, typically purchases paper from a number of different mills." Motion to Vacate Conditional Transfer Order at 2 n.2, *In re "Fine Paper" Antitrust Litigation*, MDL–323 (Jud.Pan.Mult. Lit., filed April 11, 1978).

Most of these mills, one of these mill-affiliated merchant houses and one of these independent merchant houses are common defendants to all four actions. All these common defendants, plus all the other mills and some of the other mill-affiliated and independent merchant houses named as defendants in these four actions, are also named as defendants in actions in the transferee district. The complaint in the Arizona action also specifically names as co-conspirators the two paper trade associations named as co-conspirators in the merchant house actions in the transferee district and eleven merchant houses not previously involved in any of the actions in the transferee district.

Except for the class action allegations, the allegations of the complaints in the four actions now before the Panel are very similar to those in the complaints in the merchant house actions now pending in the Eastern District of Pennsylvania.

Because these four actions appeared to involve common questions of fact with the actions in the transferee district, the Panel issued orders conditionally transferring these actions to the Eastern District of Pennsylvania. Two independent merchant house defendants[4] have moved the Panel partially to vacate the conditional transfer orders concerning those actions and to order the separation and retention in the transferor districts (or one of them) of the claims asserted in these four actions against the independent merchant house defendants. Two additional independent merchant house defendants[5] have similarly moved the Panel with respect to the Arizona action only. Plaintiffs in these four actions favor transfer of all claims in these actions to the Eastern District of Pennsylvania.

We find that the four actions before the Panel share questions of fact with the actions previously transferred to the Eastern District of Pennsylvania and that transfer of these four actions in their entirety to that district under Section 1407 will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.

The defendants that object to inclusion of claims against the independent merchant house defendants in the Section 1407 proceedings pending in the Eastern District of Pennsylvania argue that whatever claims the plaintiffs in the actions now before the Panel may have against these defendants will involve unique questions of fact regarding the conduct of these particular defendants, and that these questions of fact are not involved in the "mill defendant" actions pending in the transferee district. If the claims against the independent merchant house defendants are separated and retained in the districts in which the actions now before the Panel were filed (or in one of those districts), these parties contend, discovery concerning these claims can proceed expeditiously and relatively inexpensively, without being encumbered by the substantially broader pretrial proceedings pending in the transferee district.

The opponents of transfer also argue that inclusion of the claims against them in Section 1407 proceedings would unduly complicate those proceedings and result in prejudice to the independent merchant houses. The opponents of transfer maintain that the independent merchant houses may be included in several of the plaintiff classes which are being sought in the Eastern District of Pennsylvania. These parties assert that independent merchant house defendants, as major buyers of fine paper products, have interests clearly in conflict with the mill defendants and that inclusion of

---

4. One of these two movants is named as a defendant in one of the merchant house actions in the transferee district and as a co-conspirator in another of these actions. The other movant is named as a co-conspirator in one of the merchant house actions in the transferee district.

5. One of these two movants is named as a defendant in two of the merchant house actions in the transferee district and as a co-conspirator in three other merchant house actions in the transferee district. The other movant is named as a defendant in one merchant house action in the transferee district.

the claims against the independent merchant houses in the Section 1407 proceedings would unnecessarily create severe manageability problems for the parties and the transferee judge. Some parties assert that the plaintiffs' and defendants' initial organizational efforts in the transferee district already have been severely hamstrung by the presence of claims against the independent merchant houses. Some of the opponents of transfer maintain that any coordination of discovery or other pretrial proceedings that may become necessary involving the claims against the independent merchant houses and the actions pending in the transferee district can be accomplished by appropriate orders issued by the involved courts.

The two independent merchant house defendants that have moved the Panel partially to vacate the conditional transfer orders in all four actions before the Panel suggest as an alternative approach that the Panel establish a second transferee district in the Western United States for Section 1407 proceedings concerning claims against the independent merchant house defendants.[6]

We do not find these arguments persuasive. Initially, we note that the actions now before the Panel and the merchant house actions in the transferee district involve, either as defendants or as named co-conspirators, many of the same mill-affiliated merchant houses and independent merchant houses, as well as all the same mills. Indeed, three of the four movants are already defendants in the transferee district, and the fourth is a named co-conspirator there. And although we recognize

that the actions now before the Panel and the actions in the transferee district involve some different defendants and some dissimilar factual issues, we are convinced that all claims in all actions in this litigation share numerous substantial questions of fact concerning whether there has been a conspiracy to engage in restrictive trade practices, including price fixing, in the fine paper industry, and if so, who took part in this illegal conduct and who was affected by it. Thus Section 1407 transfer of each entire action now before us is necessary in order to prevent duplicative discovery and eliminate any possibility of conflicting class and other pretrial rulings. In particular, we observe that some of the purported classes in the transferee district are broad enough to encompass all the purported class members in the actions now before us.

We find no merit in the argument that the allegedly conflicting interests of the independent merchant houses and the other parties in the transferee district make Section 1407 transfer of the claims in these four actions against the independent merchant houses inappropriate. This alleged conflict is already before the transferee court because, as we have noted, all four moving independent merchant house defendants in the actions now before us are already defendants or named as a co-conspirator in the transferee district. In a recent decision we were faced with the question of whether to transfer a tag-along action that named as a defendant a member of a plaintiff class in previously established Section 1407 proceedings. *In re Sugar Industry Antitrust Litigation*, 437 F.Supp. 1204 (Jud.Pan.Mult.Lit.1977). Similarly, in another recent decision we were confronted

---

**6.** These parties also state that

[a] final alternative approach which may be suggested is consolidation of the four Western actions in their entirety in a Western transferee district. That alternative is distinctly less desirable because it would not achieve separation of the claims against the independent merchant house defendants and avoid the conflict described above. However, that course would at least gain some of the convenience benefits and allow the pre-

trial Judge to minimize the conflict problems, without the confusion which would flow from a consolidation of Western actions with 28 other cases which would treat the independent merchant houses as plaintiffs rather than defendants.

Motion To Vacate Conditional Transfer Orders at 10 n.6, *In re "Fine Paper" Antitrust Litigation*, MDL–323 (Jud.Pan.Mult.Lit., filed May 12, 1978).

with the issue of whether to transfer a tag-along action that involved purported class members who were defendants in previously established Section 1407 proceedings. *In re Corrugated Container Antitrust Litigation*, 447 F.Supp. 468 (Jud.Pan.Mult. Lit.1978). In both instances, we determined that the purposes of Section 1407 would best be furthered by assigning all actions to a single transferee judge who would be in the best position, by becoming familiar with all aspects and nuances of the litigation, to protect the rights of all concerned, while at the same time streamlining the entire pretrial process. *Id.* at 470–71; *In re Sugar Industry Antitrust Litigation, supra*, 437 F.Supp. at 1206–08. In *In re Corrugated Container Antitrust Litigation* we emphasized that

> any antagonistic interests among the parties in the various actions may be accommodated by the transferee judge in designing the pretrial program. *See . . In re Delta Airlines Crash at Boston, Massachusetts*, 395 F.Supp. 1405, 1407 (Jud.Pan.Mult.Lit.1975); *In re Franklin National Bank Securities Litigation*, 393 F.Supp. 1093, 1095 (Jud.Pan.Mult.Lit. 1975). And discovery on any issues unique to [any action or party] may be scheduled by the transferee judge to proceed in a separate discovery schedule concurrently with discovery on common issues. *See In re Republic National-Realty Equities Securities Litigation*, 382 F.Supp. 1403, 1405–06 (Jud.Pan.Mult.Lit. 1974).

*In re Corrugated Container Antitrust Litigation, supra*, 447 F.Supp. at 471, *quoting from In re Beef Industry Antitrust Litigation*, 432 F.Supp. 211, 213 (Jud.Pan.Mult. Lit.1977). The opponents of transfer here have raised no significant considerations or arguments not already carefully considered by the Panel in the *Corrugated Container* and *Sugar* litigations, and we discern no reason why those decisions should not be followed in the present litigation. We note, of course, that the objectors to transfer need not participate in pretrial proceedings

unrelated to the claims against them. *See, e. g., In re Airport Car Rental Antitrust Litigation*, 448 F.Supp. 273, 275 (Jud.Pan. Mult.Lit.1978); *Manual for Complex Litigation*, Parts I and II, §§ 2.31 (rev. ed. 1977).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions entitled *State of Arizona v. Boise Cascade Corp., et al.*, D.Arizona, C.A. No. Civ–78–66–CAM; *Fred Ernst, etc., et al. v. Boise Cascade Corp., et al.*, N.D. California, C.A. No. C78–0722–RHS; *State of California v. Boise Cascade Corp., et al.*, N.D. California, C.A. No. C78–0774–SW; and *State of Utah v. Boise Cascade Corp., et al.*, D. Utah, C.A. No. C78–03131, be, and the same hereby are, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Joseph L. McGlynn, Jr. for coordinated or consolidated pretrial proceedings with the actions already pending there.