614 F.2d 958
 1980-1 Trade Cases 63,265
 In re CORRUGATED CONTAINER ANTITRUST LITIGATION.
STEERING COMMITTEE et al., Plaintiffs-Appellees,
v.
MEAD CORPORATION et al., Defendants-Appellants.
In re CORRUGATED CONTAINER ANTITRUST LITIGATION.
In re The MEAD CORPORATION, Petitioner.
 Nos. 79-3369, 79-3653.
 United States Court of Appeals,
Fifth Circuit.
 March 31, 1980.
 
 Mandell & Wright, Stephen D. Susman, Houston, Tex., for Chairman of Steering Committee.
 Howrey & Simon, Alan M. Wiseman, Robert F. Ruyak, Harold F. Baker, Ann Irene Killilea, Washington, D.C., for Mead Corp.
 Sullivan & Cromwell, William R. Norfolk, New York City, for Crown Zellerbach Corp.
 Eckert, Seamans, Cherin & Mellott, Cloyd R. Mellott, Pittsburgh, Pa., for Georgia-Pacific Corp.
 Skadden, Arps, Slate, Meagher & Flom, Leslie H. Arps, Kenneth A. Plevan, New York City, for Westvaco Corp.
 Kohn, Milstein & Cohen, Jerry S. Cohen, Washington, D.C., for Steering Committee.
 Howrey & Simon, Harold F. Baker, Robert L. Green, Jr., Ann I. Killilea, Robert F. Ruyak, Alan M. Wiseman, Washington, D.C., Butler, Binion, Rice, Cook & Knapp, Fletcher Etheridge, Houston, Tex., for defendants-appellants.
 Stephen D. Susman, Houston, Tex., for Adams Extract Co., et al.
 Appeals from the United States District Court for the Southern District of Texas.
 On Petition for Writ of Mandamus to the United States District Court for the Southern District of Texas.
 Before TJOFLAT, FAY and FRANK M. JOHNSON, Jr., Circuit Judges.
 FRANK M. JOHNSON, Jr., Circuit Judge:
 
 
 1
 For the third time this Court is called upon to determine the appropriateness of a trial court ruling in this multidistrict civil antitrust litigation. See In re Corrugated Container Antitrust Litigation, 606 F.2d 319 (5th Cir. 1979) (appeal dismissed without published opinion), petition for cert. filed, 48 U.S.L.W. 3500 (U.S. Dec. 21, 1979) (No. 79-972) (Corrugated I ); In re Corrugated Container Antitrust Litigation, 611 F.2d 86 (5th Cir. 1980) (Corrugated II ). As in the other two circumstances, the district court decision and our consideration of the matter precedes trial of the litigation, the scope of which defendants appropriately characterize as "gargantuan." The fact that the parties have once more sought the involvement of this Court in the litigation further supports our prediction in Corrugated II that "(b) efore the litigation is completed, the case will undoubtedly present numerous opportunities for parties dissatisfied with some aspect of a court ruling to claim entitlement to appellate review." 611 F.2d at 89. The case, not yet tried and far from completion, has apparently already presented those "numerous opportunities." See also In re Int'l Bus. Machines Corp., No. 79-3070, slip op. 1409, 1413 n.2, (2d Cir. Feb. 25, 1980) (IBM ).
 
 
 2
 The present controversy arises out of the refusal of the district judge, upon motion, to disqualify himself from further participation in the litigation. In No. 79-3369 defendants seek review of the district court's determination on appeal; in No. 79-3653 they request this Court to exercise its power to issue a writ of mandamus. Guided by the principles we found controlling in Corrugated II, we dismiss the appeal for want of an appealable order. Further, we deny the request for a writ of mandamus. Alternatively, we hold that under applicable statutory and case law the district judge's refusal to disqualify himself was fully justified.[1]
 
 I. APPEALABILITY: No. 79-3369
 
 3
 In the present situation defendants-appellants urge, as they did in Corrugated II, that the district court decision of which they complain is an appealable final order under 28 U.S.C. § 1291 within the meaning of the doctrine of Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Once again, their reliance on Cohen is misplaced.
 
 
 4
 To determine under the rule of Cohen the appealability of a district judge's denial of a motion for disqualification, little discussion beyond that in Corrugated II is necessary.[2] Disqualification questions are fully reviewable on appeal from final judgment. Davis v. Board of School Comm'rs, 517 F.2d 1044, 1051 (5th Cir. 1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); 13 C. Wright, A. Miller, and E. Cooper, Federal Practice and Procedure § 3553 at 384; see, e. g., Potashnick v. Port City Constr. Co., 609 F.2d 1101, 1107-15 (5th Cir. 1980); United States v. Clark, 605 F.2d 939, 941-42 (5th Cir. 1979); Whitehurst v. Wright, 592 F.2d 834, 837-38 (5th Cir. 1979); King v. United States, 576 F.2d 432, 436-37 (2d Cir.), cert. denied, 439 U.S. 850, 99 S.Ct. 155 (1978); United States ex rel. Weinberger v. Equifax, Inc., 557 F.2d 456, 463-64 (5th Cir. 1977); United States v. Partin, 552 F.2d 621, 636-40 (5th Cir.), cert. denied, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977). Precisely because disqualification issues are reviewable following entry of judgment, as a threshold matter the Cohen doctrine is unavailing. In Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978), the Supreme Court explained that, as a prerequisite to appealability under the Cohen rule, "the order must . . . be effectively unreviewable on appeal from a final judgment." See Corrugated II, supra, 611 F.2d at 88; Ruiz v. Estelle, 609 F.2d 118, 119 (5th Cir. 1980).[3]
 
 II. MANDAMUS: No. 79-3653
 
 5
 In addition to their claim that the decision of the district court is immediately appealable under the Cohen doctrine, defendants "out of an abundance of caution" also petition for a writ of mandamus. The contention does not merit extended discussion. We refuse issuance of the writ.[4]
 
 
 6
 As this Court recently stated in United States v. Denson, 603 F.2d 1143 (5th Cir. 1979) (en banc), "Countless expressions can be found in the jurisprudence to support the black-letter proposition that mandamus is an extraordinary remedy for extraordinary causes." 603 F.2d at 1146. "(O)nly exceptional circumstances amounting to a judicial 'usurpation of power' will justify this extraordinary remedy." Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967). Moreover, "(t)he Supreme Court has repeatedly stated . . . that issuance of a writ of mandamus lies in large part within the discretion of the court." United States v. Denson, supra, 603 F.2d at 1146; see Helstoski v. Meanor, 442 U.S. 500, 504, 99 S.Ct. 2445, 2447, 61 L.Ed.2d 30, 35 (1979) (quoting Kerr v. United States District Court, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976)). In the present case we decline to exercise our discretion to issue the writ and we do so without need of a comprehensive examination of the record.
 
 
 7
 For nearly one hundred years, it has been clear that " '(t)he general principle which governs proceedings by mandamus is, that whatever can be done without the employment of that extraordinary writ, may not be done with it.' " Helstoski v. Meanor, supra, 442 U.S. at 505, 99 S.Ct. at 2448, 61 L.Ed.2d at 35 (quoting Ex parte Rowland, 104 U.S. 604, 617, 26 L.Ed. 861 (1882) (emphasis added by the court)). "(A)s a general rule 'appellate review should be postponed . . . until after final judgment . . ..' Will v. United States, supra, 389 U.S. at 96 (88 S.Ct. at ---); Parr v. United States, 351 U.S. 513, 520-21 (76 S.Ct. 912, 917, 100 L.Ed. 1377) (1956). . . . (T)he party seeking issuance of the writ (of mandamus must) have no other adequate means to attain the relief he desires . . .." Kerr v. United States District Court, supra, 426 U.S. at 403, 96 S.Ct. at 2124. As discussed above, full review awaits these defendants upon appeal from final judgment.
 
 
 8
 On this ground alone we refuse to issue the writ. Additionally, however, we note that the writ of mandamus "is an order directing a public official . . . to perform a duty exacted by law," United States v. Denson, supra, 603 F.2d at 1146, and "will not issue to correct a duty that is to any degree debatable . . .." Id. at 1147 n.2. The party seeking the writ carries the burden of proving a "clear and indisputable" right to issuance of the writ. Kerr v. United States District Court, supra, 426 U.S. at 403, 96 S.Ct. at 2124; Bankers Life & Casualty Co. v. Holland, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953). As will become clear in the discussion that follows, defendants manifestly cannot demonstrate a "clear and indisputable" right to issuance of the writ. The legal duty of the district judge to disqualify himself is not merely debatable it is nonexistent.
 
 III. DISQUALIFICATION THE MERITS[5]
 
 9
 Mead, Westvaco, Georgia-Pacific, and Crown Zellerbach, appellants-petitioners here, as manufacturers of corrugated containers and corrugated sheets, are defendants in one or more of forty-four class actions and eleven non-class civil actions consolidated for pretrial proceedings[6] in the United States District Court for the Southern District of Texas and assigned to the Honorable John V. Singleton, Jr., now chief judge of that district.[7] These four parties are among the few remaining that have not settled out of the litigation.
 
 
 10
 Extensive scrutiny of the corrugated container industry gave rise to the massive litigation of which a relatively narrow controversy is herein considered. A two-year grand jury investigation of the industry resulted in criminal felony indictments against nine individuals and nine corporations, including Mead, and misdemeanor indictments against an additional seventeen individuals and five corporations. Defendants Westvaco, Georgia-Pacific, and Crown Zellerbach were not indicted. Judge Singleton, after having stayed further proceedings in the civil litigation, presided over the criminal trials of those indicted defendants who elected to stand trial. A jury acquitted the criminal defendants of all charges on April 27, 1979. On August 30, 1979, Mead filed an affidavit of bias and motion requesting Judge Singleton to recuse himself from further presiding over the civil litigation. The motion was denied.
 
 
 11
 Defendants challenge Judge Singleton's decision and ask this Court to find Judge Singleton disqualified under the applicable legal standards.[8] First, they contend that because of evidentiary findings made in the criminal trial disqualification requirements have been met. Second, they urge that certain out-of-court statements made by Judge Singleton following the criminal trial were of such a nature to require his disqualification. Third, defendants maintain that alleged out-of-court statements of Judge Singleton's law clerk and an interview with an industry magazine that she gave reflect on Judge Singleton in a manner that requires his disqualification. Each of the contentions fails.[9] Judge Singleton most appropriately refused to recuse himself.
 
 A. Evidentiary Rulings
 
 12
 Defendants' main contention that Judge Singleton is disqualified from presiding further in the civil litigation rests upon his making of evidentiary rulings during the course of the criminal trial in which Mead was involved. Pursuant to responsibilities imposed upon him by United States v. James, 576 F.2d 1121 (5th Cir. 1978), modified, 590 F.2d 575 (5th Cir.) (en banc), cert. denied, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), Judge Singleton made factual findings as a predicate to the jury's evidentiary consideration of out-of-court statements made by an alleged coconspirator.[10] Defendants urge that, because Judge Singleton made the findings,[11] he is disqualified from presiding in the future over proceedings in the civil litigation. We disagree.
 
 
 13
 No court has yet faced the precise issue presented here the effect of James rulings upon the legal propriety of a judge presiding over subsequent related proceedings. The issue, however, is not generically novel. We believe this situation not unlike countless others in which district judges become thoroughly immersed in all aspects of a case, rule on the admissibility of evidence and on its sufficiency to permit a jury to determine the litigation's outcome, and even form conclusions on ultimate facts involved and then later preside at trials involving the same facts and/or the same parties. As long as judges are not disqualified under these circumstances and overwhelming authority indicates that they are not[12] we have no difficulty in holding that Judge Singleton's James rulings in the criminal trial do not require his disqualification.
 
 
 14
 It is established beyond dispute that under Section 144[13] only allegations of "personal" bias of a judge are sufficient to require disqualification. See United States v. Grinnell Corp., 384 U.S. 563, 582-83, 86 S.Ct. 1698, 1709-10, 16 L.Ed.2d 778 (1966); Berger v. United States, 255 U.S. 22, 32-33, 41 S.Ct. 230, 232-233, 65 L.Ed. 481 (1921); United States v. Serrano, 607 F.2d 1145, 1150 (5th Cir. 1979). Moreover, for a bias to be personal, and therefore disqualifying, it "must stem from an extra-judicial source . . .." United States v. Grinnell Corp., supra, 384 U.S. at 583, 86 S.Ct. at 1710; Berger v. United States, supra, 255 U.S. at 31, 41 S.Ct. at 232; IBM, supra, slip op. at 1417; see United States v. Serrano, supra, 607 F.2d at 1150; United States v. Clark, supra, 605 F.2d at 942; Davis v. Board of School Comm'rs, supra, 517 F.2d at 1051. In the present case there can be no question but that the James rulings in the criminal case were judicial in nature. While defendants suggest that the rulings were not correct,[14] they do not hint that the rulings were in the slightest degree based upon anything other than evidence appropriately before Judge Singleton in a situation as fully judicial as any imaginable. Rather, defendants rely on the 1974 amendment to Section 455. Section 455(a)[15] now requires for disqualification only that a judge's "impartiality might reasonably be questioned." Defendants urge that, because Judge Singleton made the James rulings and because Section 455(a) does not refer to personal, extrajudicial bias, that provision requires Judge Singleton's disqualification. Defendants, however, misunderstand Section 455(a).
 
 
 15
 This Court in Davis v. Board of School Comm'rs, supra, specifically held that even after the 1974 amendment to Section 455 the disqualification statutes remain to guard against personal, extrajudicial bias or the appearance of partiality arising out of such bias.
 
 
 16
 Construing §§ 144 and 455 in pari materia we believe that the test is the same under both. We thus hold that an appellate court, in passing on questions of disqualification of the type here presented, should determine the disqualification on the basis of conduct which shows bias or prejudice or lack of impartiality . . . (,) conduct extra-judicial in nature as distinguished from conduct within a judicial context. This means that we give §§ 144 and 455 the same meaning legally for these purposes, whether for purposes of bias and prejudice or when the impartiality of the judge might reasonably be questioned.
 
 
 17
 517 F.2d at 1052 (emphasis added).[16] Since Davis, other courts have enunciated the rule that Sections 144 and 455(a) reach the same sort of conduct. IBM, supra, slip op. at 1421; United States v. Olander, supra, 584 F.2d at 882; United States v. Haldeman, 181 U.S.App.D.C. 254, 356 n. 297, 559 F.2d 31, 133 n. 297 (D.C.Cir. 1976), cert. denied, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); Hawaii-Pacific Venture Capital Corp. v. Rothbard, 437 F.Supp. 230, 233 (D.Hawaii), appeal dismissed, 564 F.2d 1343, 1347 (9th Cir. 1977); see King v. United States, supra, 576 F.2d at 437. Moreover, in numerous cases since the enactment of Section 455(a) courts have held that familiarity with defendants and/or the facts of a case that arises from earlier participation in judicial proceedings is not sufficient to disqualify a judge from presiding at a later trial.[17]
 
 
 18
 We have long disclaimed any notion of " 'no-deposit/no-return judges, disposable after one use' ". United States v. Partin, supra, 552 F.2d at 637 n. 20 (quoting United States v. Harris, 458 F.2d 670, 678 (5th Cir.), cert. denied, 409 U.S. 888, 93 S.Ct. 195, 34 L.Ed.2d 145 (1972)); see United States v. Archbold-Newball, supra, 554 F.2d at 682. We do so again. Judge Singleton's James rulings in the criminal trial are not sufficient to cause a reasonable third party to question his impartiality in the civil litigation. Nothing to which defendants point suggests anything but a "reasonable likelihood that the cause will be tried with the impartiality that litigants have a right to expect in a United States district court." United States v. Ritter, supra, 540 F.2d at 464.[18]
 
 B. Judge Singleton's Out-of-Court Comments
 
 19
 The second ground on which defendants urge the disqualification of Judge Singleton involves a conversation between him and an attorney for one of the acquitted criminal defendants shortly after completion of the criminal trial. The allegations concerning the conversation are contained in affidavits by two attorneys for Mead.[19] In essence, they state that, on the day after the jury in the criminal trial acquitted the defendants, Judge Singleton played golf with William Maddux, an attorney for one of the misdemeanor defendants. On that date, according to the affidavits, Judge Singleton stated that the government had mishandled the prosecution and had left incriminating evidence unused in the document depository. Moreover, Judge Singleton was alleged to have stated that the civil plaintiffs would not make the mistakes that the government had made and that the civil defendants would not have paid $300 million to settle the lawsuit unless they were guilty.
 
 
 20
 As we are required to do, we accept as true the allegations contained in the affidavits. Berger v. United States, supra, 255 U.S. at 36, 41 S.Ct. at 234; United States v. Serrano, supra, 607 F.2d at 1150; Davis v. Board of School Comm'rs, supra, 517 F.2d at 1051; 13 Wright, Miller & Cooper, supra, § 3551 at 381. The allegations, however, are insufficient to require Judge Singleton's disqualification.
 
 
 21
 The affidavits do not suggest any personal, extrajudicial bias; nor does a question of Judge Singleton's impartiality arise because of the danger of such bias. Taken as alleged by the defendants, all of the statements reflect comments on the evidence and, at most, opinions developed through Judge Singleton's participation in the case. As in United States v. Haldeman, supra, "while these thoughts were voiced in an extra-judicial setting . . . the informational source upon which they drew the judge's experience as a judge was distinctly judicial." 181 U.S.App.D.C. at 359, 559 F.2d at 136. Such statements are not improper and do not require Judge Singleton's disqualification. See United States v. Clark, supra, 605 F.2d at 942; United States v. Haldeman, supra, 181 U.S.App.D.C. at 359, 559 F.2d at 136; United States v. Montecalvo, supra, 545 F.2d at 685; United States v. Bernstein, supra, 533 F.2d at 785.
 
 C. Actions of Judge Singleton's Law Clerk
 
 22
 Defendants' final contention that Judge Singleton is disqualified from presiding further in the litigation is derivative in nature. Defendants assert that the conduct of Judge Singleton's law clerk necessitates his disqualification.[20] Since this Court has held that ordinarily a judge's bias, to be disqualifying, must run to a party rather than merely to the attorney, Davis v. Board of School Comm'rs, supra, 517 F.2d at 1050-51, we think it fitting to restrict those situations in which the bias of a law clerk will work to disqualify the clerk's employer. Clearly, a law clerk's views cannot be attributed to the judge for whom the clerk works. Moreover, even if law clerks' opinions accurately reflected the views of their employers, we could not hold Judge Singleton disqualified in the present case because of actions and statements attributed to his law clerk.
 
 
 23
 Defendants allege that the law clerk voiced her opinions on the resolution of the criminal case to one of Mead's lawyers. Setting aside questions, of which we have many, of the propriety of such comments, they are clearly based upon her observations made in connection with the case. If Judge Singleton cannot be found disqualified for opinions he developed in the course of the litigation, it is difficult to comprehend how he could be found disqualified because of the opinions his law clerk developed in a judicial setting.
 
 
 24
 The law clerk also allegedly gave a press interview and, of course, defendants also urge that as a ground for the disqualification. In giving an interview with the press, the clerk most likely breached duties imposed upon her by Canons 3 A(6),[21] see United States v. Haldeman, supra, 181 U.S.App.D.C. at 357, 559 F.2d at 134, and 3 B(2),[22] of the Code of Judicial Conduct for United States Judges. Nevertheless, the statements attributed to the clerk constitute no basis for disqualification of Judge Singleton. Indeed the statements express no opinion whatsoever. Rather, they merely state obvious fact: if fewer members of the class elect to participate in the settlement, each claimant's share will increase. There is no basis on which Judge Singleton should be disqualified.
 
 
 25
 No. 79-3369 APPEAL DISMISSED.
 
 
 26
 No. 79-3653 WRIT OF MANDAMUS DENIED.
 
 
 
 [1]
 To dispose of the present matter solely on the issues of appealability and entitlement to a writ of mandamus might put to rest questions concerning the propriety of further involvement in the case by the district judge. Nevertheless, the extraordinary stakes involved (the proposed partial settlement totals nearly $300 million, see Corrugated II, supra, 611 F.2d at 89) and our experience with the progress of the litigation thus far convince us that ultimately appellate consideration of the issue of disqualification will likely be necessary. For those reasons we reach the merits of the contentions raised here. See part III, infra
 
 
 [2]
 The Cohen doctrine should be strictly construed. North Am. Acceptance Corp. Securities v. Arnall, Golden & Gregory, 593 F.2d 642, 645 (5th Cir. 1979); see Litton Systems, Inc. v. Southwestern Bell Tel. Co., 539 F.2d 418, 425 (5th Cir. 1976); Weit v. Continental Ill. Nat'l Bank & Trust Co., 535 F.2d 1010, 1014 (7th Cir. 1976); International Bus. Mach. Corp. v. United States, 480 F.2d 293, 298 (2d Cir. 1973) (en banc), cert. denied, 416 U.S. 979, 94 S.Ct. 2413, 40 L.Ed.2d 776 (1974); Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc., 455 F.2d 770, 773 (2d Cir. 1972). . . . (I)t is important to remember that "we must be parsimonious in our analysis of appealability." North Am. Acceptance Corp. Securities, supra, 593 F.2d at 645. We emphasize that we must consider "the hazard that piecemeal appeals will burden the efficacious administration of justice and unnecessarily protract litigation . . .." Nissan Motor Corp. Antitrust Litigation, 552 F.2d 1088, 1094 (5th Cir. 1977)
 611 F.2d at 89. In Ruiz v. Estelle, 609 F.2d 118, 119 (5th Cir. 1980), this Court noted the recent tendency of appellate courts "toward less interlocutory cossetting."
 
 
 [3]
 Defendants urge that in light of the complex nature of the case only immediate review of the district judge's decision will be effective. Potashnick v. Port City Constr. Co., supra, refutes that contention. In Potashnick, this Court examined disqualification issues on appeal from final judgment. Although trial of the case lasted thirty-three days and "spawned" a record of twenty-five volumes, the parties received complete review of the matter. 609 F.2d at 1104, 1107-15
 Our determination that questions concerning disqualification of judges are not immediately appealable under Cohen is fully consistent with decisions of other courts. See United States v. State of Washington, 573 F.2d 1121, 1122 (9th Cir. 1978); Scarrella v. Midwest Fed'l Savings & Loan, 536 F.2d 1207, 1210 (8th Cir.), cert. denied, 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976); Robinson v. Largent, 419 F.2d 1327, 1327 (3d Cir. 1970); Dubnoff v. Goldstein, 385 F.2d 717, 721 (2d Cir. 1967); Rosen v. Sugarman, 357 F.2d 794, 796 (2d Cir. 1966); 13 Wright, Miller & Cooper, supra, § 3553 at 385.
 
 
 [4]
 We do not deny our authority to review on mandamus the question of disqualification. Courts not infrequently reach the merits of disqualification issues on a consideration of whether mandamus will issue. Davis v. Board of School Comm'rs, supra, 517 F.2d at 1051-52; see IBM, supra, slip op. at 1414-16; Bell v. Chandler, 569 F.2d 556, 559-60 (10th Cir. 1978); United States v. Ritter, 540 F.2d 459, 460-65 (10th Cir.), cert. denied, 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976); In re Rodgers, 537 F.2d 1196, 1197-98 (4th Cir. 1976); Scarrella v. Midwest Fed'l Savings & Loan, supra, 536 F.2d at 1210; Pfizer, Inc. v. Lord, 456 F.2d 532, 536-44 (8th Cir.), cert. denied, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676 (1972); Rosen v. Sugarman, supra, 357 F.2d at 796-800; In re Union Leader Corp., 292 F.2d 381, 383-92 (1st Cir.), cert. denied, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961); Henry v. Speer, 201 F. 869, 870-72 (5th Cir. 1913). Moreover, in exceptional circumstances the writ will lie. See Bell v. Chandler, supra, 569 F.2d at 560; United States v. Ritter, supra, 540 F.2d at 464-65; In re Rodgers, supra, 537 F.2d at 1198
 
 
 [5]
 See note 1, supra, and accompanying text
 
 
 [6]
 The cases were consolidated under the caption In re Corrugated Container Antitrust Litigation, M.D.L. 310 (S.D.Tex.) pursuant to 28 U.S.C. § 1407. In re Corrugated Container Antitrust Litigation, 441 F.Supp. 921, 924 (Jud.Pan.Mult.Lit.1977)
 
 
 [7]
 Id
 
 
 [8]
 The relevant statutory provisions governing disqualification of federal judges are 28 U.S.C. §§ 144, 455
 Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
 The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists . . .. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.
 28 U.S.C. § 144.
 (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
 (b) He shall also disqualify himself in the following circumstances:
 (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
 (e) No justice, judge, or magistrate shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.
 28 U.S.C. § 455 (as amended Dec. 5, 1974, Pub.L. 93-512, § 1, 88 Stat. 1609; Nov. 6, 1978, Pub.L. 95-598, tit. II § 214(a), (b), tit. IV § 402(c), 92 Stat. 2661, 2682).
 
 
 [9]
 Westvaco, Georgia-Pacific, and Crown Zellerbach also urge that Judge Singleton's handling of the Mead motion constitutes another reason for this Court to hold him disqualified from presiding further in the litigation. The specifics of the complaints will be detailed below but comment on one is appropriate here. Defendants argue that to some extent Judge Singleton's failure to refer Mead's motion for recusal to another district judge "placed him( ) in an adversary position vis-a-vis . . . the moving parties and by doing so accentuated . . . the appearance of judicial partiality." The contention completely lacks merit. No case referred to by defendants or located in an exhaustive search of the authority suggests any negative inference that can be drawn from the fact that the judge to whom a motion to recuse is directed rules on the motion. "(I)t is for the judge who is the object of the affidavit (of bias) to pass on its sufficiency." 13 Wright, Miller & Cooper, supra, § 3551 at 375. "(W)hile the statute undoubtedly permits referring the disposition of an affidavit of bias to another judge, . . . the adoption of such a procedure as a general rule would be unwise." United States v. Azhocar, 581 F.2d 735, 738 (9th Cir. 1978), cert. denied, 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979) (citation omitted); see United States v. Olander, 584 F.2d 876, 883 (9th Cir. 1978); In re Union Leader Corp., supra, 292 F.2d at 384
 
 
 [10]
 Before admitting the statements of the alleged coconspirator as evidence Judge Singleton found " 'substantial, independent evidence of a conspiracy' " and of the criminal defendants' participation in that conspiracy. See United States v. James, supra, 590 F.2d at 581 (quoting United States v. Nixon, 418 U.S. 683, 701 n.14, 94 S.Ct. 3090, 3104 n.14, 41 L.Ed.2d 1039 (1974) (emphasis added by the James court)). At the close of the evidence, before he permitted the jury to consider the statements in its deliberations, Judge Singleton made the second of the James findings that a preponderance of the evidence supported the conclusion that the conspiracy existed, that the defendants and the out-of-court declarant were coconspirators, and that the statements were made in furtherance of the conspiracy. See United States v. James, supra, 590 F.2d at 582
 
 
 [11]
 Defendants argue that disqualification follows not because of the substance of Judge Singleton's James findings but rather because he was required by James to make the determinations. "Though not in agreement with (the) James rulings in the criminal case, defendants do not question or complain about those adverse rulings here."
 
 
 [12]
 See, e. g., United States v. Clark, supra, 605 F.2d at 941-42; Rice v. McKenzie, 581 F.2d 1114, 1118 (4th Cir. 1978); Weber v. Garza, 570 F.2d 511, 512 n. 1 (5th Cir. 1978); United States v. Wolfson, 558 F.2d 59, 62-64 (2d Cir. 1977); United States v. Archbold-Newball, 554 F.2d 665, 681-82 (5th Cir.), cert. denied, 434 U.S. 1000, 98 S.Ct. 644, 54 L.Ed.2d 496 (1977); United States v. Partin, supra, 552 F.2d at 637-39; United States v. Cowden, 545 F.2d 257, 265-66 (1st Cir. 1976), cert. denied, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977); United States v. Harris, 542 F.2d 1283, 1303-04 (7th Cir. 1976), cert. denied, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977); United States v. Jeffers, 532 F.2d 1101, 1111-12 (7th Cir. 1976), aff'd in part, vacated in part, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168, rehearing denied, 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 164 (1977); 13 Wright, Miller & Cooper, supra, § 3549 (1979 Supp. at 269)
 
 
 [13]
 See note 8, supra
 
 
 [14]
 See note 11, supra
 
 
 [15]
 See note 8, supra
 
 
 [16]
 The Davis court, however, recognized an exception to the requirement where the circumstances are of such an extreme nature that the judicial conduct demonstrates "pervasive" bias and prejudice. 517 F.2d at 1051; see Whitehurst v. Wright, supra, 592 F.2d at 838; United States v. Wolfson, supra, 558 F.2d at 63. Indeed, such aggravated circumstances have arisen. See Nicodemus v. Chrysler Corp., 596 F.2d 152, 155-56 (6th Cir. 1979); Bell v. Chandler, supra, 569 F.2d at 559-60
 
 
 [17]
 See authorities cited note 12, supra; see also Meeropol v. Nizer, 429 U.S. 1337, 1338 n. 2, 97 S.Ct. 687, 689 n. 2, 50 L.Ed.2d 729 (Marshall, Circuit Justice, 1977); United States v. Montecalvo, on rehearing, 545 F.2d 684, 685 (9th Cir. 1976), cert. denied, 431 U.S. 918, 97 S.Ct. 2184, 53 L.Ed.2d 229 (1977); United States v. Dodge, 538 F.2d 770, 782 (8th Cir. 1976), cert. denied, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 547 (1977); United States v. Bernstein, 533 F.2d 775, 784-85 (2d Cir. 1976), cert. denied, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1977)
 The Second Circuit, applying the same standards that govern here, stated in United States v. Wolfson, supra, that "a defendant who has undergone two lengthy trials before the same judge, both of which ended in guilty convictions, may come to consider that judge as biased against him. These suspicions are understandable, but . . . they do not provide a reasonable basis for questioning a judge's impartiality." 558 F.2d at 64. Similarly, in United States v. Partin, supra, this Court held that a judge who had presided over six separate trials arising from one indictment was not disqualified from presiding at a retrial of two defendants following an appellate reversal. 552 F.2d at 636, 639. In Partin, we rejected a per se rule against a district court judge's retrying a case after mistrial or reversal. "(S)uch a rule is not the sine qua non for either the substance or the appearance of justice. . . . Altogether, we see little to commend such a rule . . .." Id. at 639 (emphasis added). Finally, in United States v. Archbold-Newball, supra, we held a district judge's comments at defendants' bail hearing not to disqualify him from trying the defendants. The judge's statements were to the effect that (1) he had, on the basis of three earlier trials, concluded that a conspiracy did exist; (2) he would consider the earlier trials; (3) he believed a D.E.A. agent involved in the case to be a credible witness; and (4) he thought that there was abundant additional evidence of the defendants' membership in what he described as a "large-scale conspiracy composed of the most vicious individuals that this court has ever seen." 554 F.2d at 681-82.
 
 
 [18]
 The legislative history to Section 455(a) indicates that:
 (I)n assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a reasonable basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.
 H.R.Rep. No. 1453, 93d Cong., 2d Sess., reprinted in (1974) U.S.Code Cong. & Admin.News, pp. 6351, 6355 (emphasis in original).
 Despite defendants' contention that their argument rests on the fact of the James rulings rather than on the substance of those rulings, see note 11, supra, we are highly skeptical that if Judge Singleton's James findings had been different, any question of his disqualification would have been raised at least by defendants. To that extent, defendants are "seeking to avoid the consequences of (an) expected adverse decision." H.R.Rep. No. 1453, supra, at 6355.
 
 
 [19]
 Harold F. Baker, attorney for Mead, filed an affidavit in support of Mead's "motion for Judge Singleton to recuse himself" on August 29, 1979. On September 14, 1979, Robert L. Green, another Mead attorney, filed an affidavit in support of a motion for Judge Singleton to reconsider his denial of the original motion
 In pertinent part, Mr. Baker's affidavit states as follows:
 On or about June 14, 1979, I had a telephone conversation with Mr. William Maddux, who represented . . . a misdemeanor defendant () in the trial of the criminal case. During that conversation, Mr. Maddux confirmed to me that he and Judge Singleton played golf on April 28, 1979, the day after the jury verdict acquitting the eight remaining defendants in the criminal case. Mr. Maddux stated that on this occasion Judge Singleton told Mr. Maddux in substance that there was a lot of incriminating evidence in the document depository which the government did not use and that the government mishandled the case against the defendants. Furthermore, Mr. Maddux stated to me that Judge Singleton told him in substance that the civil defendants must be guilty or they would not have paid $300 million to settle the civil corrugated class action suit.
 With respect to the conversation, Mr. Green's affidavit states:
 On June 8, 1979, I had a telephone conversation with William Maddux, an attorney who represented Mr. Numan Garrison, a misdemeanor defendant in the trial of the criminal case. I telephoned Mr. Maddux solely to ask him to send me certain exhibits which he had introduced in the criminal case, copies of which I did not have.
 During the course of my conversation with Mr. Maddux, Mr. Maddux stated to me, without any question from, or suggestion by me, that Judge Singleton had made a number of statements about the civil corrugated container litigation. Maddux quoted Judge Singleton as having stated that the acquittals were just a quirk because the government had much more damaging evidence it could have introduced but that the jury did not hear.
 Mr. Maddux also quoted Judge Singleton as having stated that the lawyers for the civil plaintiffs are sharp and that the evidence which was not introduced in the criminal case would come out in the civil cases.
 Mr. Maddux further stated that Judge Singleton made it clear to him that there was no question in the Judge's mind concerning the criminal defendants' guilt and that the Judge blamed the verdict on the inadequacy of the government attorneys.
 Mr. Maddux also quoted Judge Singleton as stating that the defendants must be guilty since they paid $300 million in settlements because smart people did not pay that kind of money unless there was more evidence than what the jury in the criminal case heard.
 
 
 [20]
 Baker's affidavit filed in support of this contention states that:
 It is my understanding that Judge Singleton's law clerk . . . was hired specifically to assist Judge Singleton in the criminal corrugated cases and the related civil corrugated cases.
 (The clerk) on or about May 9, 1979, shortly after the not guilty verdicts were returned April 27, 1979, told an attorney representing Mead in substance that defendants did not deserve to win the criminal trial and that plaintiffs' counsel in the civil cases would do a better job than the government counsel did in the criminal cases.
 At some time prior to June 6, 1979, (she) was reportedly interviewed by, or talked to a representative of, a trade magazine for purchasing agents, a group which includes employees of the named plaintiffs and class members in the pending corrugated container proceedings. (The clerk) was quoted in Purchasing magazine, published on June 6, 1979, as saying that "Industrial buyers may choose not to participate in the settlement and press their own suit, seeking higher payment. If a large number of companies decide to file their own suits, then the amount left of the $295 million for the others will be higher." . . . The statements attributed to (her) in this trade magazine constitute a recommendation (or may be reasonably so interpreted) that purchasers of corrugated containers opt out of the classes established for settlement and file their own suits. These statements . . . are particularly prejudicial in light of (her) expressed, and I believe well known, bias against defendants . . . . Her statements could have a substantial adverse impact on the ultimate dollar liability of Mead and defendants generally in this civil litigation. This is especially so since notices to the class are now being prepared and will, in the normal course of events, be sent to prospective class members.
 The law clerk's statements to counsel outside the courtroom, her interview and the substance of her remarks, I believe, constitute bias on her part and taint the appearance of impartiality required of Judge Singleton and his law clerk in this massive pending litigation. Whether or not Judge Singleton assented to the interview or whether or not (her) public statements reflect the judge's viewpoints, her comments raise serious questions concerning the appearance of this Court's impartiality in these civil corrugated container proceedings.
 
 
 [21]
 Canon 3 A(6) provides:
 A judge should abstain from public comment about a pending or impending proceeding in any court, and should require similar abstention on the part of court personnel subject to his direction and control. This subsection does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court.
 
 
 [22]
 Canon 3 B(2) provides:
 A judge should require his staff and court officials subject to his direction and control to observe the standards of fidelity and diligence that apply to him.