**UNITED STATES of America**

v.

**E. A. GREGORY et al.**

Crim. No. 80–00025.

United States District Court,
S. D. Alabama, N. D.

Aug. 8, 1980.

W. A. Kimbrough, Jr., U. S. Atty., Mobile, Ala., for U. S.

Darrell McGowen, James F. Holderman, Chicago, Ill., Alton R. Brown, Jr., Ian F. Gaston, Mobile, Ala., Roger M. Sherman, Pensacola, Fla., for Gregory et al.

### ORDER

HAND, District Judge.

This criminal case involves multiple counts of bank fraud, mail fraud, and conspiracy allegedly committed by five defendants. Two of the defendants, E. A. Gregory and Vonna Jo Gregory, have filed a motion seeking to have me recuse myself.[1] For the reasons set forth below, the Court denies the motion to recuse. It is further ordered that any party who disagrees with this ruling shall take an interlocutory appeal to the Court of Appeals for the Fifth

---

1. While the motion was filed by the Gregorys all of the defendants are adopting the motions and arguments of each other unless they choose to disavow a particular motion.

Circuit within ten (10) days from the issuance of this ruling. Failure to appeal within ten days will be taken by the Court to constitute a waiver of any further objection to the Court's ruling.

## I. The Motion to Recuse

This criminal case is not the first involvement with federal court which the Gregorys have had. In a prior criminal case they were indicted for the same charges alleged in this indictment:[2] The Gregorys have also been parties or officers of parties in six other civil actions in which I presided.[3]

The motion to recuse filed in the instant case focuses upon four broad grounds. Again the Gregorys attempt to show judicial bias by raising as an issue the adverse rulings which befell them in the civil cases in which they were involved. The Court has rejected this argument as legally insufficient in the first criminal case involving the Gregorys. A copy of that order is attached as Appendix A. Second, the Gregorys grab upon a remark the Court directed to their counsel, Messrs. Holderman and McGowen, in the closing moments of a hearing on June 30, 1980. Third, the Gregorys draw into question my business transactions with Merchants National Bank. Fourth, the Gregorys make a scatter-gun attack upon a potpourri of issues which the Court generously characterizes as makeweight.

2. The charges in that case, *United States of America v. E. A. Gregory, et al.*, Crim. No. 80–00019 (S.D.Ala.1980), were dismissed by this Court because of fatal defects in the indictment.

3. The styles and docket numbers of those civil cases are contained in the affidavits which E. A. Gregory and Vonna Jo Gregory have attached to the instant motion to recuse.

4. For instance, in the supporting brief the defendants allege that I repeated my "choke on it" remark more than once. Joint Brief in Support of Motion of E. A. Gregory and Vonna Jo Gregory for Disqualification of Honorable W. B. Hand, filed on July 21, 1980, at 4. This is true but was at the request of Mr. Holderman so that he could preserve it for the record.

### 1. The Prior Civil Cases

In their motion to recuse, the Gregorys continue to search for grounds for disqualification by harping upon the fact that I have presided over civil cases to which they were parties or officers of parties. This contention has been rejected by the Court before and I do so again. *See* Appendix A (previous order setting forth reasons).

### 2. June 30, 1980 Hearing

The second ground which the Gregorys offer in support of their motion to recuse is my statement, which was directed to counsel, "I hope you choke on it." The circumstances surrounding this statement are not as insidious as the defendants argue.[4] The request by counsel for a copy of my financial disclosure statement touched an exposed nerve. Like many other judges and public officials, I dislike being required to disclose my personal finances. My dislike is strong. Disclosure is, in my opinion, an unwarranted and unjustifiable invasion into my right of privacy. My reaction to the request by counsel for the Gregorys that I disclose my financial statement was sharp. I admit that.

But a judge is not required to disqualify himself unless "his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "Use of the word 'might' in the statute was intended to indicate that disqualification should follow if the reasonable man, were he to know all the circumstances, would

The brief which the defendants filed in support of their motion to recuse misrepresents the situation. The brief examines the reaction of a reasonable man based upon the assumption that the Gregorys themselves were the object of my statement. The Gregorys were seated thirty feet from me, off to one side, at the time of my remark, and counsel for the Gregorys, on whom my eyes were fixed, stood right in front of me. No reasonable person could interpret the remark as being addressed to the Gregorys themselves.

Mrs. Gregory, in her affidavit in support of the motion to recuse, noted that I appeared angry when I came onto the bench on June 30, 1980. Upset was more like it. My eighty-nine-year-old mother was near death that day and minutes before going into Court I had had a telephone conference with her doctors.

harbor doubts about the judge's impartiality." *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980). Moreover, when examining the perception of a reasonable man, a judge is required "to exercise his discretion in favor of disqualification if he has *any* question about the propriety of his sitting in a particular case." *Id.* at 1112 (emphasis added). I do not believe that a reasonable person who understood my sensitivity about disclosing my financial statement and the interplay between a judge and counsel which normally accompanies any lengthy proceeding would harbor doubts about my impartiality. There is *no* question in my mind about the propriety of my sitting on this case.

### 3. Merchants National Bank

■ The defendants assert that, as a separate (or additional) reason why I would appear to the reasonable man to lack impartiality, my business transactions with the Merchants National Bank, a local bank, draw into question my impartiality. There is no allegation that my financial dealings with the Merchants National Bank constitutes "a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding . . . ." 28 U.S.C. § 455(b)(4). Indeed, if that were true, I would be disqualified. *Id.* at § 455(e). Instead, the Gregorys argue that because they had business dealings with the Merchants National Bank when they ran the Wilcox County Bank that, in light of my business dealings with Merchants National Bank, a reasonable man would harbor doubts about my impartiality. This allegation amounts, I think, to whistling in the dark. Pushed to its logical conclusion, every judge who did business with a bank (checking accounts, automobile loans, home mortgages) would be disqualified from trying cases involving bankers.

### 4. The Makeweight Allegations

■ The defendants further attempt to bootstrap their motion to recuse by arguing

that, although personal bias or prejudice may not be present which would disqualify me, the circumstances in this case fall within the general rule that sometimes a judge can be disqualified where the circumstances are of such an extreme nature that his judicial conduct demonstrates "pervasive" bias and prejudice. *In re Corrugated Container Antitrust Litigation*, 614 F.2d 958, 965 n.16 (5th Cir. 1980) (citing *Davis v. Board of School Commissioners of Mobile County*, 517 F.2d 1044, 1051 (5th Cir. 1975)). As the Court indicated at the beginning of this order, the allegations made in support of this rule are nothing more than makeweight. For instance, the defendants allege that I have shown a pervasive judicial bias and prejudice against them by ignoring what they characterize as contemptuous conduct by the government prosecutor for allegedly violating Fed.R.Crim.P. 6(e). After the first criminal case against these defendants was dismissed, the prosecutor allegedly made statements in the press which violated the rule of grand jury secrecy. The Court will only note that unless a violation of its processes is flagrant, the usual method by which the Court would consider contempt proceedings against a prosecutor would be through the initiation by the defendants of a motion for contempt. *See, e. g., In re Grand Jury Investigation*, 610 F.2d 202, 219 (5th Cir. 1980) (moving party must make a prima facie case to secure a hearing for contempt against government attorneys). The defendants have never made any motion to hold the U. S. Attorney in contempt for his alleged violations of rule 6(e).

As additional surplusage, the defendants complain about the gag order which this Court imposed on June 6, 1980 (since rescinded). At the hearing at which this Court imposed its gag order the Court fully articulated its reasons for doing so. To sum them up, the Court was concerned about the possibility that a miscarriage of justice might result if the parties, on both sides, continued to try this case in the newspapers and on the television. There have been many press-related stories which focus on this case. Apparently, both sides have

been, at one time or another, the source for these stories. The Court, in a desire to try this case in the courtroom and not in the press, imposed the gag order on June 6, 1980 solely for the purpose of minimizing outside taint.

These allegations and the other allegations which the defendants contend show extreme bias and prejudice in the judicial conduct of this Court reflect, at most, a disagreement by the defense attorneys with the manner in which this Court supervises its docket. Counsel are entitled to their difference of opinion. However, to suggest that my various supervisory actions in this case show pervasive bias and prejudice of a judicial character is unwarranted.

### 5. Conclusion

In conclusion, apparently the most seriously advanced allegation by this motion is my "choke on it" statement of June 30, 1980. However, if all the circumstances surrounding this utterance were known to the "reasonable man" as they must if a reasonable judgment was to be passed, he would harbor no doubts about my impartiality. If there were any question in my mind about this conclusion after examining all the circumstances which surrounded my statement, I would exercise my discretion in favor of recusal. However, I have no such doubt.

### II. Interlocutory Appeal

■ Generally, in criminal cases, interlocutory appeals are not permitted.[5] Unlike civil cases no statute permits interlocutory appeals in a criminal case, *see, e. g.,* 28 U.S.C. § 1292(b) (permitting interlocutory appeals in civil cases), and the cases note that the rule of finality, embodied in 28 U.S.C. § 1291, "has particular force in criminal prosecutions because 'encouragement of delay is fatal to the vindication of the criminal law.'" *United States v. MacDonald,* 435 U.S. 850, 853–54, 98 S.Ct. 1547, 1548–49,

56 L.Ed.2d 18 (1978) (quoting *Cobbledick v. United States,* 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940)). However, there are exceptions to the final-judgment rule.

On two occasions in criminal cases the Supreme Court has departed from the rule that " '[f]inality of judgment has been required as a predicate for federal appellate jurisdiction.' " *Id.* 435 U.S. at 853, 98 S.Ct. at 1548 (quoting *Abney v. United States,* 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977). The departures involved fundamental rights, *Abney v. United States* (fifth amendment and double jeopardy); *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (denial of a motion to reduce bail prior to trial); *but see United States v. MacDonald* (sixth amendment right to a speedy trial), where the order of the district court "finally determine[d] claims of right separate from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). This Court recognizes that "[c]ollateral orders, appealable under § 1291, are very few in number." *United States v. Wright,* 622 F.2d 792 (5th Cir. 1980) (per Brown, J.); *United States v. Mock,* 604 F.2d 336 (5th Cir. 1979); *United States v. Stricklin,* 591 F.2d 1112 (5th Cir. 1979) (denial of motion to dismiss indictment). Nonetheless, in this criminal case, the interests of justice, *cf.* Fed.R.Crim.P. 2, dictate that any party who objects to this Court's ruling on the motion to recuse should be able to obtain review of that ruling before being put to the burden and expense of a lengthy trial. *But see In re Corrugated Container Antitrust Litigation,* 614 F.2d 958, 960–61 (5th Cir. 1980).[6] The Court is sensitive to

---

5. The Speedy Trial Act takes into account delays caused by interlocutory appeals. 18 U.S.C. § 3161(h)(1)(E).

6. In the case of *In re Corrugated Container Antitrust Litigation,* 614 F.2d 958 (5th Cir. 1980), the Court recognized that "extraordinary stakes" warranted appellate review of serious recusal questions.

the fact that different people, each acting in good faith, can come to different conclusions when attempting to access the judgment of the hypothetical reasonable man. *Compare Potashnick v. Port City Construction Co.,* 609 F.2d 1101 (5th Cir. 1980) (disqualifying) *with In re Corrugated Container Antitrust Litigation,* 614 F.2d 958 (5th Cir. 1980) (no disqualification) *and United States v. Serrano,* 607 F.2d 1145 (5th Cir. 1979) (no disqualification) *and United States v. Bobo,* 586 F.2d 355, 366 n.14 (5th Cir. 1978) (no disqualification despite comment) *and United States v. Archbold-Newball,* 554 F.2d 665, 681 (5th Cir. 1977) (no disqualification despite comment) *and Davis v. Board of School Commissioners of Mobile County,* 517 F.2d 1044 (5th Cir. 1975) (no disqualification).

Should any party fail to take an interlocutory appeal from this order within ten days from the date this order is issued the Court will deem the parties to have waived all objections to this order. Of course, if the Court of Appeals rejects any interlocutory appeal which the parties attempt they will be able to raise the issue later, should that be necessary.