**In re PASCO TOBACCO CO., INC., Bankrupt,**

**Fred ZIMMERMAN, Trustee, Plaintiff,**

v.

**William S. ROSENTHAL, Defendant.**

**Bankruptcy No. 78–1917G.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 4, 1983.

---

**3.** *In re Damron,* supra at p. 359.

**4.** KRS § 427.030.

Fred Zimmerman, Pennsauken, N.J., trustee.

Jonathan H. Ganz, Andrew F. Napoli, Pincus, Verlin, Hahn, Reich & Goldstein, Philadelphia, Pa., for plaintiff, Fred Zimmerman, trustee.

Dennis J. Valenza, Gilbert B. Abramson, Philadelphia, Pa., for defendant, William S. Rosenthal.

Herman Winderman, Pepper & Winderman, Philadelphia, Pa., for bankrupt, Pasco Tobacco Co., Inc.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

There comes a time in almost any judge's life when someone challenges his fairness and impartiality. Unfortunately, for me, after seventeen years, our time (to our utter surprise) has come. The defendant in this adversary proceeding has moved that we recuse ourself. He also seeks to dismiss the trustee's complaint for lack of subject matter jurisdiction. For the reasons stated hereafter, we will deny both of these motions.

The facts of this case are as follows:[1] The bankrupt, Pasco Tobacco Co., Inc., filed a petition in bankruptcy under the Bankruptcy Act of 1898 on December 26, 1978. A first meeting of creditors was thereafter held, at which we presided. At that meeting the bankrupt's president, William Rosenthal ("Rosenthal"), was asked to testify to the bankrupt's financial affairs. However, he declined to do so, exercising his Fifth Amendment right to refuse to answer certain questions although we offered him a broad grant of immunity. After hearing Rosenthal's testimony, we directed the trustee in bankruptcy to report the facts of the case to the United States Attorney and the Federal Bureau of Investigation since it appeared that Rosenthal may have been involved in violations of federal criminal

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

law. Subsequently, the trustee commenced the instant adversary proceeding to recover certain funds which Rosenthal allegedly misappropriated from the bankrupt.

The motion to disqualify ourself is predicated upon 28 U.S.C. §§ 455(a) which provides as follows:

§ 455. Disqualification of justice, judge, or magistrate

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

Rosenthal contends that this court's impartiality might reasonably be questioned since the court directed the trustee to report the facts of the case to the United States Attorney and the Federal Bureau of Investigation. Our direction to the trustee was mandated under § 3057 of the United States Criminal Code which states as follows:

§ 3057. Bankruptcy investigations

(a) Any judge, receiver, or trustee having reasonable grounds for believing that any violation under chapter 9 of this title or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United States attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed. Where one of such officers has made such report, the others need not do so.

(b) The United States attorney thereupon shall inquire into the facts and report thereon to the judge, and if it appears probable that any such offense has been committed, shall without delay, present the matter to the grand jury, unless upon inquiry and examination he decides that the ends of public justice do not require investigation or prosecution,

in which case he shall report the facts to the Attorney General for his direction. 18 U.S.C. § 3057.

■ In his motion, Rosenthal objects to matters which occurred while we were acting in our official judicial capacity. No personal or extrajudicial bias is alleged. The case law construing § 455(a) holds that "familiarity with defendants and/or the facts of a case that arises from earlier participation in judicial proceedings is not sufficient to disqualify a judge from presiding at a later trial." *In Re Corrugated Container Antitrust Litigation,* 614 F.2d 958 (5th Cir.1980), *cert. den.* 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114. In *Corrugated Container* the motion for recusal in a civil anti-trust action was raised after the same trial judge had conducted a criminal anti-trust action which resulted in a guilty verdict. As stated in *Corrugated Container,* "We have long disclaimed any notion of no-deposit/no return judges, disposable after one use." *Id.* at 966 (quotes omitted). Accordingly, we will deny the motion for recusal.

■ Rosenthal's motion to dismiss is based upon *Northern Pipeline Const. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in which the Supreme Court held that the power given to bankruptcy judges under the Bankruptcy Reform Act of 1978 was unconstitutionally broad. Although the case at bench arises, not under that Act, but the Bankruptcy Act of 1898, it must therefore be decided within the more limited jurisdictional scope afforded under the Bankruptcy Reform Act of 1978 [2] despite Rosenthal's contention that *Marathon* applies by analogy to the 1898 Act to divest us of power to decide this dispute.

■ In deciding *Marathon* the Supreme Court stated the question presented as "whether the assignment by Congress to bankruptcy judges of the jurisdiction granted in § 241(a) of the Bankruptcy Act of

---

**2.** The Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 403(a), 92 Stat. 2549, 2683 (1978), states the general rule that cases arising under the 1898 act shall be resolved as if the 1978 act had not been passed.

1978, 28 U.S.C. § 1471 (1976 ed. Supp. III), violates Art. III of the Constitution." 102 S.Ct. 2862. This language indicates that the court squarely addressed the 1978 Act rather than the previous one. Although this does not preclude the inference from *Marathon* that the 1898 Act is unconstitutional, we find that the differences between the two statutes as outlined in the plurality opinion leads us to conclude that the earlier act is not unconstitutional. As stated by the court:

> We note, moreover, that the 1978 Act made at least three significant changes from the bankruptcy practice that immediately preceded it. First, of course, the jurisdiction of the bankruptcy courts was "substantially expanded by the Act." H.R.Rep. No. 95–595, supra, p. 13 (1977). Before the Act the referee had no jurisdiction, except with consent, over controversies beyond those involving property in the actual or constructive possession of the court. 11 U.S.C. § 46(b) (repealed). See *MacDonald v. Plymouth Trust Co.,* 286 U.S. 263, 266, 52 S.Ct. 505, 506, 76 L.Ed. 1093 (1932). It cannot be doubted that the new bankruptcy judges, unlike the referees, have jurisdiction far beyond that which can be even arguably characterized as merely incidental to the discharge in bankruptcy or a plan for reorganization. Second, the bankruptcy judges have broader powers than those exercised by the referees. See infra at 2878–2879; H.R.Rep. No. 95–595, supra, p. 12 and nn. 63–68. Finally, and perhaps most significantly, the relationship between the district court and the bankruptcy court was changed under the 1978 Act. Before the Act, bankruptcy referees were "subordinate adjuncts of the district courts." Id., at 7, U.S.Code Cong. & Admin.News 1978, p. 5698. In contrast, the new bankruptcy courts are "independent of the United States district courts." Ibid.; Collier on Bankruptcy, ¶ 1.03, at 1–9 (15th ed. 1981). Before the Act, bankruptcy referees were appointed and removable only by the district court. 11 U.S.C. § 62 (repealed). And the district court retained control over the reference by his power to withdraw the case from the referee. Bkrtcy.Rule 102. Thus even at the trial stage, the parties had access to an independent judicial officer. Although Congress could still lower the salary of referees, they were not dependent on the political branches of government for their appointment. To paraphrase Justice BLACKMUN's observation in *[U.S. v.] Raddatz,* supra, the primary "danger of a 'threat' to the independence of the [adjunct came] from within, rather than without the judicial department." 447 U.S. 667, at 685, 100 S.Ct. 2406, at 2417, 65 L.Ed.2d 424 (concurring opinion).

102 S.Ct. 2876, n. 31. *See also Weick v. Heltzel* (In Re Metro Equipment & Rental Corp.), 28 B.R. 579 (Bkrtcy.N.D.Ohio 1983) (holding that *Marathon* does not apply to the 1898 Act).

■ An alternative basis for upholding our jurisdiction is Bankruptcy Rule 915 [3] which states in part as follows:

### Rule 915
### OBJECTION TO JURISDICTION OF COURT OF BANKRUPTCY

(a) Waiver of Objection to Jurisdiction. Except as provided in Rule 112 and subject to Rule 928, a party waives objection to jurisdiction of an adversary proceeding or a contested matter and thereby consents to such jurisdiction if he does not make objection by a timely motion or answer, whichever is first served.

This rule is derived from § 2a(7) of the 1898 Act [former 11 U.S.C. § 11(a)(7) ] which, in essence, states the substance of Rule 915. Since the first document Rosenthal filed in this proceeding was his answer, which did not contain an objection to the court's juris-

---

**3.** Rule 915 is one of a series of Bankruptcy Rules which were promulgated in the early 1970's. New Bankruptcy Rules became effective on August 1, 1983, and superceded the earlier rules for those cases arising under the 1978 Act. But the earlier rules are still applicable to cases filed under the 1898 Act.

diction, he is deemed to have waived that objection. 1 *Collier on Bankruptcy* ¶ 2.40[1], at 263 (14th ed. 1974). Thus, we find that we have jurisdiction to hear this action and we will deny the motion to dismiss.