UNITED STATES of America,
Plaintiff–Appellee,

Yonkers Branch–National Association for the Advancement of Colored People; Regina Ryer, a Minor, by her mother and next friend, Charlotte Ryer, on behalf of themselves and all individuals similarly situated, Plaintiffs–Intervenors–Appellees,

v.

YONKERS BOARD OF EDUCATION, Defendant–Appellee,

City of Yonkers and Yonkers Community Development Agency, Defendants,

City of Yonkers, Defendant–Appellant,

United States Department of Housing and Urban Development and Samuel R. Pierce, Secretary, Added–Defendants–Appellees,

State of New York, Mario Cuomo, as Governor of the State of New York, the Board of Regents of the State of New York, Martin C. Barell, R. Carlos Carballada, Adelaide L. Sanford, Willard A. Genrich, Emlyn I. Griffith, Jorge L.

Battista, Lora Bradley Chodos, Louise P. Matteoni, Edward Meyer, Floyd S. Linton, Salvatore Sclafini, Mimi Levin Lieber, Shirley C. Brown, Norma Gluck, Thomas Frey, James McCabe, Sr., in their official capacities as members of the State Board of Regents, Department of Education of the State of New York, Thomas Sobol, as Commissioner of Education in the State of New York, Urban Development Corporation of the State of New York, Vincent Tese, as Director of the Urban Development Corporation, Added–Defendants–Defendants–Appellees.

No. 1828, Docket 91–6098.

United States Court of Appeals,
Second Circuit.

Argued Aug. 12, 1991.

Decided Oct. 7, 1991.

Raymond P. Fitzpatrick, Jr., Birmingham, Ala. (Gilbert M. Sullivan, Jr., J. Michael Cooper, Birmingham, Ala., Jamie A. Hastings, Corp. Counsel, Eugene J. Fox, Sp. Counsel, Yonkers, N.Y., of counsel), for defendant-appellant City of Yonkers.

Linda F. Thome, Dept. of Justice, Washington, D.C. (David K. Flynn, Dept. of Justice, Washington, D.C., John R. Dunne, Asst. Atty. Gen., of counsel), for plaintiff-appellee U.S.

Michael H. Sussman, Goshen, N.Y., for plaintiff-intervenors-appellees Yonkers Branch–National Ass'n for the Advancement of Colored People, et al.

Before MINER, WALKER and McLAUGHLIN, Circuit Judges.

PER CURIAM:

The backdrop for the present litigation is well-documented in numerous decisions of this court, *see, e.g., United States v. Yonkers Bd. of Educ.,* 837 F.2d 1181 (2d Cir. 1987), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988); *Yonkers Racing Corp. v. City of Yonkers,* 858 F.2d 855 (2d Cir.1988), *cert. denied,* 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 833 (1989), and need not be repeated here. This appeal involves a contention by the City of Yonkers ("City") that the district judge and his housing advisor, Oscar Newman (the "OHA"), created an appearance of partiality by excluding the City from certain discussions and engaging in *ex parte* communications with opposing counsel and non-parties and by commenting to the media about the case. The OHA was employed to provide expert advice and assistance to the district court in the implementation of the Housing Remedy Order ("HRO") and the January 1988 Consent Decree ("Decree") and to coordinate the activities of various parties, including the United States, the Department of Housing and Urban Development ("HUD") and non-parties, including the Yonkers Municipal

Housing Authority ("MHA") and representatives of Deluxe Development of New York, Inc. ("Deluxe"), the developer selected to build the public housing required by court order.

Although the City alleges that the OHA engaged in numerous improper communications during the period he has served as court-appointed housing advisor, the City focuses primarily on communications occurring prior to and at the time of entry of certain indemnification orders. On November 8, 1990, the district court ordered that the City indemnify HUD, the MHA and Deluxe for all expenses that may arise by virtue of title defects in City-owned property on which public housing was to be constructed. The City alleges that the OHA had conversations with Brian Heffernan and John Herold, counsel for the United States and HUD, respectively, and that an *ex parte* meeting took place between the OHA, representatives of Deluxe, the MHA and HUD during a recess of a hearing held on November 8. The *ex parte* communications allegedly pertained to negotiations over the contract of sale ("Turnkey Contract") of City-owned property to Deluxe and, specifically, the concerns about potential litigation expenses arising as a result of defects in title of that property.

On November 16, 1990, the City filed a motion to vacate and modify the November 8, 1990 indemnification order. A hearing on the motion was scheduled for November 29, 1990, but the City maintains that *ex parte* communications between the OHA and Heffernan and representatives of Deluxe and HUD continued on a daily basis from November 8, 1990. The City claims that the OHA held another *ex parte* conference with attorneys for Deluxe, the MHA and other opposing parties in the hallways of the courthouse on November 16, 1990. On December 19, 1990, the district court issued a modified indemnification order requiring the City to indemnify HUD and the MHA, but not Deluxe, as against any losses sustained as a result of title defects. Deluxe was relegated to the pursuit of remedies against HUD and the MHA.

Other alleged improper communications include *ex parte* meetings between Judge Sand, Heffernan, representatives of Deluxe and others, but not the City, on November 14 and December 7, 1990. The City also contends that the judge engaged in an off-the-record evidentiary investigation through *ex parte* communications with Karen Hill, the Executive Director of the Fair Housing Implementation Office ("FHIO"), an agency created by the court for the specific purpose of implementing the Long Term Plan ("Plan"). The Plan, which is a part of the Decree, obligates the City to make good faith efforts to build 800 units of housing by June 1992. The City contends that the transcript of the November 8, 1990 hearing evidences that the court had formed an opinion, based on communications with Hill, that the Plan should be modified to require the City to transfer additional City-owned properties for the construction of housing.

The City also argues that disqualification is warranted because of public comments made by Judge Sand and by the OHA. These public comments include an interview given by Judge Sand, which was published in the *Herald Statesman*, and an interview published in the Gannett Westchester newspaper involving the OHA. The OHA also was involved in another incident in which his criticisms of a bank that reneged on its promise to finance the construction of housing because of pressure from customers residing in Yonkers were printed in newspaper articles.

On February 19, 1991, the City filed a motion to disqualify Judge Sand and the OHA pursuant to 28 U.S.C. § 455(a) & (b)(1) (1988). The City requested, on March 4, 1991, discovery of memoranda exchanged by the OHA and the district judge and diaries maintained by the OHA. It also sought to depose the OHA, Heffernan, Herold and Hill. After a hearing on March 14, the district court denied the recusal motion. The court found that "[t]here has been no impropriety whatsoever in the Court's dealings with the [OHA], with whom I consult often, as I do with my law clerks, as a confidential advisor or in my or his discussions with others concerning the

contract to which the City is not a party." Judge Sand also denied the motion to compel discovery and granted the government's motion for a protective order prohibiting the requested depositions.

## DISCUSSION

■ The City contends that the district court's order denying its recusal and discovery motions is a final judgment under 28 U.S.C. § 1291 (1988). Appellees point out that ordinarily an order denying a motion to recuse is not appealable as a final judgment under section 1291, *see Rosen v. Sugarman,* 357 F.2d 794, 796 (2d Cir.1966), and does not fall within the narrow collateral-order exception to the finality requirement, *see In re Corrugated Container Antitrust Litigation,* 614 F.2d 958, 960–61 & n. 3 (5th Cir.), *cert. denied,* 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980). However, the cases relied upon by appellees, such as *Rosen,* are not dispositive because in those cases there had not been a judgment on the merits at the time of the recusal motion. Here, the City was held liable six years ago, "leav[ing] nothing for the court to do but execute the judgment." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 373–74, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981) (citations omitted). In cases involving a protracted remedial phase, we must give "§ 1291 a 'practical rather than a technical construction.'" *Id.* at 375, 101 S.Ct. at 674 (citation omitted). In fact, substantive post-judgment orders issued in such cases have been found to be appealable. *Cf. Bradley v. Milliken,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) (recounting history of appellate review of court orders issued during remedial phase of school desegregation litigation). Thus, we conclude that the order at issue is appealable.

■ Although the City has objected on numerous occasions to certain of the OHA's activities since his appointment by the court, it has not challenged Judge Sand's impartiality until the present motion. A motion to disqualify must be made "at the earliest possible moment" after obtaining information of possible bias. *Ap-*

*ple v. Jewish Hosp. & Medical Center,* 829 F.2d 326, 333 (2d Cir.1987). The timeliness requirement is necessary to prevent waste of judicial resources, *see In re International Business Machs. Corp.,* 618 F.2d 923, 933 (2d Cir.1980), and to ensure that a movant does not "hedg[e] its bets against the eventual outcome" of a proceeding. *Apple,* 829 F.2d at 334. In fact, "a judge has an affirmative duty ... not to disqualify himself unnecessarily, particularly 'where the request for disqualification was not made at the threshold of the litigation and the judge has acquired a valuable background of experience.'" *National Auto Brokers Corp. v. General Motors Corp.,* 572 F.2d 953, 958 (2d Cir.1978) (quoting *Rosen,* 357 F.2d at 797–98), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979).

We think that the City has had several opportunities prior to February 19, 1991 to move for disqualification. It could have moved for recusal either before it sought review in this court of the district court's orders requiring the City to convey unencumbered title to the property, *see United States v. Yonkers Bd. of Educ.,* 927 F.2d 85 (2d Cir.1991), or at the same time it asked the district court to reconsider its indemnification order. The City has failed to demonstrate good cause for seeking recusal at this late date in light of those opportunities. *See Apple,* 829 F.2d at 334; *United States v. Branco,* 798 F.2d 1302, 1304 (9th Cir.1986). The belatedness of the attempt cannot be overcome by the contention that the City was not aware of the communications. That contention is belied by the record. We thus conclude that the motion was untimely. *See Apple,* 829 F.2d at 334.

■ Even if the motion were timely, which it was not, recusal is not warranted. Under 28 U.S.C. § 455(a), a judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The movant must show an appearance of impartiality based on "what a reasonable person, knowing and understanding all the facts and circumstances, would believe." *In re Drexel Burnham*

*Lambert Inc.*, 861 F.2d 1307, 1309 (2d Cir. 1988), *cert. denied*, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989). Under 28 U.S.C. § 455(b)(1), a judge also must "disqualify himself ... [w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." Recusal in this case is not required under either alternative.

The obligation to indemnify could not reasonably be contested by the City and already was in effect before the November and December 1990 hearings, when the allegedly improper contacts occurred. The duty to provide sites for housing was imposed on the City in the Decree, and, in March 1991, this Court described as "frivolous" the City's challenge to the concomitant duty to defend against any title defects in the property it was required to convey. *See Yonkers*, 927 F.2d at 88. Based on those "facts and circumstances," a reasonable person would not conclude that there was any appearance of partiality by the court's contacts, either directly or through the OHA, with pertinent parties to implement obligations already imposed by prior court orders.

Disqualification under section 455(b)(1) is not required in this case, since the contacts were made and the information was acquired by Judge Sand in his judicial capacity. *See Drexel Burnham*, 861 F.2d at 1314. While information acquired in a judicial capacity may lead to an appearance of partiality, here it did not because the communications did not relate to "disputed evidentiary facts," contrary to the contention of the City. The City has been obligated to convey clear title to property since the entry of the Decree, and indemnification is simply a way of assuring that only the City will be liable for its failure to convey clear title.

At the hearing on the recusal motion, Judge Sand did not equate the OHA's position with that of a law clerk. He merely noted that he consulted with the OHA, as he does with his law clerks, on a confidential basis. At the February 29, 1988 hearing, Judge Sand described the OHA's role

as "coordinating the activities of the various participants in [planning and building the public housing units] and assuring that matters go forward expeditiously and in compliance with the [HRO]." The parties, including the City, indicated that they understood the OHA's role, and *ex parte* contacts have occurred between the OHA and all parties, including the City, since then. By affidavit, the government flatly denies the allegation that it used the OHA as a conduit for improper material. The City has submitted nothing controverting the government's denial. We conclude that *ex parte* contacts by the OHA are merely part of the performance of his prescribed duty and did not create an appearance of partiality on the part of the district court judge.

■ In any event, no appearance of partiality was created by excluding the City from discussions about the Turnkey Contract, to which the City was not a party. Other parties, including the NAACP, were excluded from these discussions. Any requirement that all parties must be included in every conversation would further delay implementation of the remedy. Moreover, the post-judgment posture of this case is relevant. At this stage, the duty of the court is not to determine whether the City is liable or whether the City must comply with the HRO and the Decree but to implement the remedy. Limiting certain discussions to those parties immediately involved was reasonable, given the continued efforts by the City to thwart implementation of the remedy.

■ Next, the City maintains that interviews with the media gave rise to an appearance of partiality and contravened Canon 3 B(9) of the ABA Model Code of Judicial Conduct, which provides that a judge "shall not, while a proceeding is pending ..., make any public comment that might reasonably be expected to affect its outcome or impair its fairness or make any nonpublic comment that might substantially interfere with a fair ... hearing." We discern no impropriety in Judge Sand's public comments. In his interview, he only restated what he had been saying in open court for the past few years and did not

discuss the details of remedy implementation. *Cf. United States v. Haldeman,* 559 F.2d 31, 134–36 (D.C.Cir.1976) (per curiam) (en banc) (responses by judge during interview to questions about whether defendants could get a fair trial in the district did not warrant disqualification), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). Similarly, the OHA's comments, although perhaps unwise, did not transgress the court's specific requirement that the OHA not discuss with the media "his views or the court's views as to any sites or any proposed modifications of the plan" and thus do not warrant disqualification.

■ With regard to the order denying the motion to compel discovery, we may not disturb this ruling unless there is a clear showing of abuse of discretion. *See Robertson v. National Basketball Ass'n,* 622 F.2d 34, 35–36 (2d Cir.1980). The City has failed to show any abuse of discretion.

Sufficient information regarding the events underlying the motion to recuse has been provided to the City through the affidavits of counsel for HUD and the United States, the OHA's invoices and records of contacts with the parties. There was no need for the City to discover memoranda between the court and the OHA or the diaries of the OHA, since those materials would be duplicative of the information already provided. Discovery of the substance of challenged communications between Judge Sand and the OHA is not appropriate, as a degree of confidentiality in the relationship between the court and its housing advisor is justifiable in light of attempts to block implementation of the Decree by the City and other groups. Additionally, depositions of opposing counsel are disfavored, *see Shelton v. American Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir.1986); *cf. Hickman v. Taylor,* 329 U.S. 495, 516, 67 S.Ct. 385, 396, 91 L.Ed. 451 (1947) (Jackson, *J.,* concurring), and would serve no useful purpose here in light of the information already supplied to the City.

We have considered the City's remaining contentions and find them to be without foundation.

CONCLUSION

We affirm the order of the district court in all respects.